97 So.2d 609 (1957)
Samuel KASHIN, Petitioner,
v.
FOOD FAIR, Inc., American Mutual Liability Insurance Co., and Florida Industrial Commission, Respondents.
Supreme Court of Florida.
July 31, 1957.
On Rehearing October 18, 1957.
*610 Julius Ser and Kaplan & Ser, Miami, for petitioner.
Clemon J. Ehrlich and Blackwell, Walker & Gray, Miami, for Food Fair, Inc., and American Mut. Liability Ins. Co.
Burnis T. Coleman and Rodney Durrance, Tallahassee, for Florida Industrial Comm.
Writ of certiorari denied.

On Rehearing Granted
THORNAL, Justice.
We consider on rehearing granted a petition for certiorari filed by Kashin, an employee-claimant, seeking review of an order of the Florida Industrial Commission which reversed an order of the deputy commissioner who had found Kashin to be permanently *611 and totally disabled as the result of a compensable injury.
We must determine whether there was competent substantial evidence to sustain the findings of the deputy commissioner and further whether the full Commission ruled correctly in dismissing the claim of the employee.
On November 10, 1952, Kashin, a sixty-nine-year old carpenter, severed the distal portions of the four fingers and thumb of his left hand as the result of a skill saw accident arising out of and in the course of his employment by Food Fair Stores, Inc. Surgery was performed by a Dr. Holmes who removed the damaged portions of the fingers and thumb leaving only short nubs. About thirty days after the accident Kashin complained to the doctor that he was suffering shoulder pains. X-rays were taken to ascertain whether arthritis was present. There was none. Dr. Holmes discharged Kashin on March 13, 1953, with the conclusion that he had reached maximum medical recovery and that the shoulder pains resulted from immobility following the accident. Two and one-half years later, on October 7, 1955, Kashin consulted Dr. Haverfield and complained that pains radiated up into his left arm and shoulder and that he could do nothing with his left hand. Dr. Haverfield found that the tips of the finger nubs were sensitive to pressure, and that he had very little hand mechanism with which to make any kind of grip. However, he was of the view that the shoulder pains were not related to the accident and that the man should be rated on the basis of the total disability of the hand itself.
On November 4, 1955, Kashin consulted Dr. Barrett, another neurosurgeon. Dr. Barrett reported that the man still had a shoulder condition, and that he had definite limitations of elevation and motion in his left shoulder. It was his view that there was a causal relationship between the accident and the left shoulder condition. When Dr. Barrett testified before the deputy commissioner there was testimony as to a subsequently determined heart condition. When so advised he expressed the opinion that regardless of the cardiac condition, the man's shoulder condition would of itself be disabling "to a degree." Dr. Barrett performed a stellate block on the left shoulder but this operation had admittedly questionable results. He referred Mr. Kashin to a Dr. Neal, an orthopedic surgeon, who administered some fourteen physiotherapy treatments. Dr. Neal was of the opinion that Kashin was suffering from a shoulder-hand syndrome which resulted from the amputation of the fingers and thumb of the left hand. He testified that he would be inclined to rate Kashin's disability as to his left arm only, rather than to the body as a whole. About a week prior to the hearing before the deputy commissioner, Mr. Kashin consulted a Dr. Rosenblum who specialized in internal medicine and cardiology. This doctor was of the view that Kashin was suffering from a cardiac condition which was, in his opinion, probably brought on by the loss of blood and shock at the time of the original injury, supplemented by inactivity following the injury. The doctor on cross-examination conceded that he had no idea as to the extent of loss of blood Kashin had suffered. He was further of the opinion that Kashin was suffering a causalgia of the left arm involving the left shoulder girdle. In his opinion Kashin could not work at the time of the hearing and, as to the extent of disability, he stated that "the trauma could be said to make a difference between sickness and health in this man." This was the only testimony which even remotely related the heart condition to the accident.
Kashin himself testified that he had no strength in his left arm, that he continued to have pains in his shoulder which were not quite as bad since he took the physiotherapy treatments, and that he noticed the heart condition coming on two or three months before the hearing which was begun on August 1, 1956. He exhibited his arm to the deputy who noted in his findings that the left arm was atrophied sufficiently *612 to be detected. Kashin also demonstrated physically the restrictions in motion of his left arm and shoulder.
The deputy found that the heart condition was the product of the accident and further that the employee suffered a permanent total disability because of the shoulder-hand syndrome. He rated him as permanently and totally disabled and awarded him compensation on the basis of total permanent disability of the body as a whole.
The matter was reviewed by the full Industrial Commission, the majority of which found that there was no competent substantial evidence to support the deputy on any score. The full Commission entered an order reversing the deputy and directing the dismissal of Kashin's claim. The matter comes to us for review by petition for certiorari. Upon our original consideration of the case we were of the view that the full Commission ruled correctly and certiorari was denied. A petition for rehearing was filed and granted without rearguments. We now have the matter under consideration on rehearing.
The contentions of the petitioner Kashin are that the full Commission undertook to weigh and evaluate the evidence and the credibility of the witnesses and disregarded "the substantial evidence rule." He contends that he is entitled to compensation for permanent total disability of the body as a whole as distinguished from a permanent partial disability rating based on the loss of a hand.
The respondents contend that there was no competent substantial evidence to support the conclusions of the deputy that Kashin suffered a permanent total disability either because of the heart condition or because of the shoulder-hand syndrome.
It should be pointed out that Kashin originally was compensated for total disability from the time of the accident to March 14, 1953, when he was discharged by Dr. Holmes as having reached maximum medical recovery, and thereafter he was compensated for 175 weeks on the basis of the total loss of use of his left hand. The matter later came before the deputy commissioner on Kashin's petition filed July 10, 1956, claiming that he did not reach maximum recovery on March 14, 1953, nor had he reached maximum recovery at the time of the filing of the petition. He claimed in the alternative that if maximum recovery was reached at some point then his permanent partial disability rating should be based on the body as a whole rather than the left hand.
The contention presents for our consideration whether compensation should be allowed for permanent partial disability for the loss of a hand under Section 440.15(3) (c), Florida Statutes, F.S.A., or whether it should be allowed under Section 440.15(3) (u), Florida Statutes, F.S.A., covering "unscheduled injuries". The difference is important because of the differential of time over which compensation is to be paid. It is even more important because for the scheduled injury of loss of a hand, the extent of permanent partial disability is specifically established by the statute. On the other hand, we have held that under the provisions of Section 440.15(3) (u), Florida Statutes, F.S.A., the deputy commissioner shall take into consideration not only the functional disability but the industrial or earning capacity disability which might be influenced by such elements as education, age, experience, type of work and the like. See Ball v. Mann, Fla. 1954, 75 So.2d 758.
At the outset, of course, we are confronted with the rule which we have consistently recognized that the findings of the deputy commissioner will not be disturbed if they are supported by any competent substantial evidence, provided, of course, that he has complied with the essential requirements of the law. This rule governing the scope of review applies to the extent of review available to the full Commission when it reviews an order of the deputy commissioner in the same *613 fashion that it applies to an appellate Court. Wilson v. McCoy Mfg. Co., Fla. 1954, 69 So.2d 659; United States Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So.2d 741.
The petitioner takes the position that the full Commission totally failed to observe the competent substantial evidence rule in its examination of this record.
We consider first the matter of the alleged disability resulting from the heart condition which was apparently ascertained to exist only about a week prior to the hearing and some two and one-half years subsequent to the accident. Although one doctor testified that Mr. Kashin had a heart condition when he examined him just before the hearing, his conclusion as to a causal relationship between the accident and the ultimate cardiac ailment were at most rather nebulous and speculative and grounded on assumed factual conditions the extent of which he could not actually know to exist.
We do not here undertake to evaluate the weight of the conflicting medical testimony and certainly we would not undertake to comment on the relative credibility to be accorded the various medical experts. They all appear to be thoroughly trained and competent doctors. The fact remains, however, that the only evidence regarding the relationship between the accident and the heart condition was in terms of probabilities rather than reasonable certainties and could not be considered as competent substantial evidence to support the conclusions of the deputy on this point. We are, therefore, of the view that the full Commission ruled correctly in reversing the deputy on this finding.
We come next to the shoulder-hand syndrome aspect of the matter. Practically all of the medical experts were of the view that the shoulder condition was the product of the industrial injury. Some expressed the opinion that such disability as Mr. Kashin has experienced should be limited to the loss of the use of his hand. Others were of the view that the shoulder-hand syndrome was disabling "to a degree." One doctor was of the view that he was suffering a causalgia of the left arm involving the left shoulder girdle and that this was directly related to the accident. Incidentally, one of the doctors described "causalgia" as a "first cousin" to a syndrome. They are, therefore, not too much at variance as to the technical designation of Mr. Kashin's shoulder condition.
The respondents, however, insist that in the ultimate the disability that Mr. Kashin has suffered has been a loss of a hand which is a scheduled injury under Section 440.15(3) (c), Florida Statutes, F.S.A., which provides for the payment of sixty percent of the average weekly wages for a period of 175 weeks. They assert that he has been paid this and that they have no further liability.
Petitioner Kashin insists that the position of the respondents would be correct except for the fact that he has actually suffered an injury which disables him to an extent beyond that normally occasioned by the loss of a hand. His position is that superadded to the loss of the hand is the condition of his shoulder which is a genuinely real disabling physical condition.
In Blakiston's New Gould Medical Dictionary, 2d ed., we find the following definition of a shoulder-hand syndrome, towit:
"A syndrome characterized by severe constant intractable pain in the shoulder and arm, limited joint motion, diffuse swelling of the distal part of the upper extremity, fibrosis and atrophy of muscles, and decalcification of underlying bones. The cause is not well understood. It is similar to and may be identical with, or may be a form of, causalgia (reflex sympathetic dystrophy)."
It appears to us that assuming Mr. Kashin is suffering a shoulder-hand syndrome or causalgia, as the doctors appear *614 to agree, then the pain and limited joint motion in his shoulder is an injury which is superadded to the scheduled injury of the loss of a hand.
In Larson's Workmen's Compensation Law, Vol. 2, Sec. 58.20, it is stated:
"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive."
Numerous decisions are cited to support the rule which Larson describes as the rule of the great majority of modern decisions. In the instant case, for example, when Dr. Haverfield examined Mr. Kashin he found that he had very little hand mechanism with which to make any kind of grip. The loss of the mechanical use of the hand was a part of the permanent partial disability contemplated in the scheduled injury. Incapacity or inconvenience or inability to work resulting from the lack of fingers would similarly come within the scheduled injury category of disabilities. However, when as the result of a scheduled injury a claimant suffers a loss of efficiency or pain in some other part of his body, not included in the specific schedule, as in the shoulder girdle area in the matter before us, then the disability or incapacity produced by the condition in such other part of the body cannot be said to be within the ambit of a scheduled injury under the Workmen's Compensation Act. The amount allowed for the scheduled injury then ceases to be exclusive and it becomes the responsibility of the deputy commissioner in the first instance on the basis of competent substantial evidence to fix the extent of disability produced by the unscheduled injury. In such a case he is then authorized to consider the various elements reflecting adversely on the employee's earning capacity as distinguished from a strictly functional disability. Ball v. Mann, supra. We find this rule to have support in numerous cases. See Lentz v. Mumy Well Service, 1954, 340 Mich. 1, 64 N.W.2d 673; National Surety Corp. v. Martin, 86 Ga. App. 77, 71 S.E.2d 666; Texas Employers' Ins. Ass'n v. Polk, Tex. Civ.App. 1954, 269 S.W.2d 582.
In the instant case, therefore, there was present competent substantial evidence upon which the deputy could make a finding of compensable injury under Section 440.15(3) (u), Florida Statutes, F.S.A., and the full Industrial Commission ruled erroneously when they held to the contrary. However, the ultimate holding of the full Commission was correct to the extent that there was no competent substantial evidence whatsoever to sustain the deputy's conclusions that the unscheduled injury produced permanent total disability. In fact there was no evidence at all that we can find in the record that would guide either the deputy or this Court to any conclusion as to the extent or percentage of disability produced by the unscheduled injury. We do not overlook the fact that in addition to the medical testimony the deputy had the benefit of viewing the claimant in person but there is nothing appearing in the record to suggest that the claimant himself even claims permanent total disability as the result of the unscheduled injury.
For this reason the conclusion of the full Commission reversing the matter will have to be sustained. However, the judgment of the Commission directing that the claim be dismissed will have to be reversed and the cause sent back to the deputy with directions to make findings on the basis of any competent substantial evidence that may be submitted to him with reference to the extent of disability produced by the unscheduled injury.
As to the portion of the order dismissing the claim of the petitioner, certiorari is granted, and that portion of the order is hereby quashed. As to the remainder of the order, the petition for certiorari is denied but with directions to return the *615 matter to the deputy commissioner for further proceedings consistent herewith.
TERRELL, C.J., and HOBSON, DREW and O'CONNELL, JJ., and WIGGINTON, District Judge, concur.