403 So.2d 995 (1981)
DADE FEDERAL SAVINGS & LOAN ASSOCIATION and Fidelity & Deposit Company of Maryland, Appellants,
v.
Doris SMITH, Appellee.
No. XX-188.
District Court of Appeal of Florida, First District.
April 10, 1981.
On Rehearing June 9, 1981.
Rehearing Denied September 24, 1981.
Robert C. Barrett of Akerman, Senterfitt & Eidson, Orlando, for appellants.
J. David Parrish and Bill McCabe of Shepard, McCabe & Cooley, Orlando, for appellee.
*996 McCORD, Judge.
Appellee, who was 56 years of age, was obese weighing 280 pounds, had arthritis in her knees, and had worked for appellant for 23 years. She walked with a cane, and appellant had known for years that she had arthritis. She never missed work on account of it, however. She was a cleaning woman, and while working, she tripped and fell on her right knee and head, causing a sprain to her right knee. Dr. Field testified that she had degenerative arthritis that preceded the sprain. He gave her a 5% disability to the right lower extremity on account of the fall and a 20% pre-existing impairment to the right lower extremity from the arthritis. When asked if he had an opinion within reasonable medical probability as to whether the industrial accident injury she sustained merged with the pre-existing impairment to cause her to have a greater degree of disability than the industrial accident alone would have produced, he replied:
No, sir. It was my feeling that she had a 20% pre-existing impairment on a degenerative basis, she had five percent as a result of her industrial accident, and together they would be 25% but not a greater overall disability than those two together. I don't think the industrial accident either aggravated or accelerated her arthritic condition.
Further clarifying this, he said:
I feel that she had a 20% pre-existing, and I think she had a five percent as a result of the industrial accident. I think the two equals twenty-five percent in my way of simple arithmetic, but I don't think that the two merged together made one any greater than the other. I mean I don't think the arthritis was worsened by her industrial accident, and I don't think her industrial accident, as I stated it here, was worsened by her arthritis, but I think the two together, yes, gave her a twenty-five percent."
He stated that she had traumatic arthritis in both knees, the right worse than the left, with narrowing of the articular cartilage on the medial compartment; that she may ultimately have to have surgery in the right knee, but it is his best opinion that this state would have been reached with or without her fall and that it simply served to intensify her pain and make her more aware of her limitations with her right knee; that the injury was not the ultimate cause of her arthritic condition since apparently the arthritis was seen and recognized in x-rays the day of her fall and did not develop since the injury; that she will not significantly improve but that weight loss may help her symptoms but will not alter the existence of arthritis in her knee; that he does not think she will be able to return to work as a maid as that requires much time spent on her feet, squatting, stooping, kneeling and with or without surgery, the limitations will be about the same. He said her impairment in the left knee was about 10%.
Dr. Gresham gave appellee a 25% impairment in the right knee and a 15% impairment in the left knee and said the fall aggravated the pre-existing condition in the right knee but to "no clinically measurable degree." When questioned as to whether the injury from the accident merged with the pre-existing condition to give her an overall disability rating greater than the accident alone would have given her, he said:
I think she had an arthritic condition prior to her fall and that she had some permanent impairment with her leg before the fall, and as a result of the injury, she had some disability as a result of that period and that two of them equal twenty-five percent. I testified that she had five percent due to the fall. She must have had twenty percent pre-existing, so twenty plus five equals twenty-five percent.
Dr. Gresham stated that he did not think she could ever return to gainful employment unless something was done to make her better. When asked what could be done, he said:
"She could lose a lot of weight, number one. Possibly that is all that would be necessary."
*997 He said he did not think she was making any headway with the weight loss problem.
The deputy commissioner in his order erroneously stated that appellant testified she was 66 years old  she was 56. The deputy found as follows:
1. Claimant sustained an accident arising out of and in the course and scope of her employment on February 3, 1978, resulting in injuries to her right knee and head.
2. Claimant is entitled to 75% permanent partial disability of the body as a whole based on loss of wage earning capacity as well as the pre-existing arthritic condition and obesity. In making this determination, I have taken into consideration the claimant's testimony that she had been employed with the employer for 23 years and had been able to perform her normal duties without problems until the industrial accident. I also accept the testimony of both Dr. Gresham and Dr. Field that the claimant's pre-existing arthritic condition was aggravated by the industrial accident and that the claimant's obesity has contributed to her symptoms. I have also carefully reviewed the Memorandums of Law submitted by the respective attorneys and specifically find that the injury sustained to the claimant's right leg in the industrial accident has merged with the claimant's pre-existing arthritic condition in both knees and the pre-existing obesity to cause a permanent partial disability that is materially and substantially greater than that would have resulted from the injury to the claimant's right leg alone.
3. I find that the claimant would have continued her employment at Dade Federal Saving and Loan which was light and sedentary in nature but for the industrial accident and that her condition following the industrial accident was such to render her unable to perform that type of light and sedentary employment. Due to the nature of employment prior to the industrial accident and the nature of her injuries following the industrial accident, I find that it would have been fruitless for her to merely "test her employability" and therefore, find that she is 75% permanently and partially disabled.
A merger occurs under § 440.49(2)(b) when the employee has a permanent physical impairment due to a previous accident or disease or congenital condition and subsequently suffers an accident arising out of and in the course of his employment from which he suffers permanent disability and such permanent disability is materially and substantially greater than that which would have resulted had the pre-existing permanent physical impairment not existed. Here, if we were confronted only with the pre-existing permanent physical impairment caused by the arthritis followed by the industrial injury and the 75% loss of appellee's wage-earning capacity found by the deputy commissioner, we would have the necessary ingredients for merger. When, however, the deputy commissioner coupled appellee's pre-existing obesity with the pre-existing arthritis as an element of the merger, the merger was invalidated because there is no evidence presented as to the cause of the obesity or to show that it is or is not permanent. Under the facts of this case, however, it is not necessary that there be a merger of the obesity to sustain the award of the deputy commissioner. Merger will be an issue if and when the employer seeks reimbursement from the special disability trust fund. Here it is apparent that appellee had the permanent loss of wage-earning capacity found by the deputy commissioner when we look to the factors to be considered in determining loss of wage-earning capacity as set forth in Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla. 1974), and Ball v. Mann, 75 So.2d 758 (Fla. 1945). As stated in those authorities, these factors include the injured employee's physical condition, age, industrial history, education and inability to obtain the type of work which he can do insofar as affected by the injury. Thus, when we consider in the present case that appellee, with her arthritis and obesity, satisfactorily performed her work as a maid prior to the accident and that subsequent thereto she has been unable to do such work *998 because of her physical condition coupled with the additional impairment resulting from the accident, she is entitled to compensation for permanent disability resulting from loss of wage-earning capacity. We, therefore, affirm the deputy commissioner's award of 75% permanent partial disability without affirming his finding of merger and affirm his award of attorney's fee to appellee's attorney.
Affirmed.
ROBERT P. SMITH and ERVIN, JJ., concur.

ON PETITION FOR REHEARING
McCORD, Judge.
On petition for rehearing appellants contend that this Court invalidated the deputy commissioner's finding of merger and that, therefore, appellee's recovery of benefits is limited to the scheduled compensation for the injury to her right knee, pursuant to § 440.15(3)(b), Florida Statutes; that this Court erred in upholding the deputy commissioner's finding of disability due to loss of wage-earning capacity since economic impact is not a factor in benefits awarded pursuant to scheduled injuries. We recognize that in our opinion we did not declare that a finding of merger was necessary to this award of benefits based on loss of wage-earning capacity. To the contrary, however, as appellant correctly points out, since appellee's injury occurred prior to July 1979, a finding of merger is necessary to this award of benefits which otherwise would be governed by the scheduled injury provisions of § 440.15, Florida Statutes (1977). Compare Mims & Thomas Mfg. Co. v. Ferguson, 340 So.2d 920 (Fla. 1976), and Magic City Bottle and Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959). For that purpose, we must revisit and modify the original opinion.
In the original opinion, we determined that a finding of merger based on appellee's pre-existing obesity and pre-existing arthritic conditions was invalid since there was no evidence presented as to the cause of obesity or as to its permanency. Upon reconsideration of the evidence pursuant to the petition for rehearing, we have determined that a merger did occur in this case, between the pre-existing arthritic condition and the knee injury, though the evidence is insufficient to include the pre-existing obesity in the merger. Appellant took appellee as it found him as to both the obesity and the arthritis. Consequently, the benefits payable are not governed by § 440.15. The deputy commissioner was correct in going beyond the scheduled injury limitation and in considering appropriate factors to determine loss of wage-earning capacity. We, therefore, affirm the deputy commissioner's award of 75% permanent partial disability in view of the fact that merger did occur in this case.
Petition for rehearing is granted and the Court's opinion is modified as above stated.
ROBERT P. SMITH and ERVIN, JJ., concur.

ON FURTHER MOTION FOR REHEARING
McCORD, Judge.
Appellant has filed a motion for rehearing as to our previous opinion on motion for rehearing contending that our two previous opinions in this cause conflict with Bordo Citrus Products v. Varnadore, 395 So.2d 260 (Fla. 1st DCA 1981). We do not find conflict, but in view of the allegation of conflict, we consider that some clarification would be appropriate.
The distinction between Varnadore and this case hinges on our recognition of two types of merger  medical merger [which is merger of two physical (anatomical) impairments] and loss of wage-earning capacity merger (in which the resulting disability is the loss of wage-earning capacity). While we have found no opinion up to this point specifically dealing with loss of wage-earning capacity merger and using that terminology, it is obvious from the workers' compensation law that the legislature has provided for it. Section 440.49(4)(b)2 b, Florida Statutes (1977), provides:

*999 "Merger" describes or means that:
* * * * * *
b. The permanent disability resulting from the subsequent accident or occupational disease is materially and substantially greater than that which would have resulted had the permanent physical impairment not existed ... (Emphasis supplied.)
Section 440.02(9), Florida Statutes (1977), provides:
"Disability" means incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury.
In Varnadore, the court found the evidence did not support a relationship between the accident and the permanent partial disability (permanent partial anatomical impairment) assigned by the doctor and accepted by the deputy commissioner. Therefore, there could be no medical merger. Loss of wage-earning capacity merger was not involved in that case. Here, however, the deputy commissioner found a 75% permanent partial disability based upon loss of wage-earning capacity which he found to have resulted from the combination of the previously existing permanent partial arthritis impairment and the permanent partial impairment caused by the accident. The evidence supports this finding. The evidentiary basis therefor is set forth in the deputy commissioner's findings 2 and 3, quoted in our original opinion. Although Dr. Field testified there was no merger, he and Dr. Gresham were testifying only as to medical merger. It was not within their province to consider whether or not there was loss of wage-earning capacity merger. That was a determination only the deputy commissioner could make. Compare Photo Electronics Corporation v. Glick, 398 So.2d 900 (Fla. 1st DCA 1981).
In this case, the deputy commissioner was justified in increasing the disability rating due to a loss of wage-earning capacity merger, in that when all factors were considered together, appellant was no longer able to work as she could before the industrial accident. Compare Wright v. Gulf and Western Food Products and Risk Management Services, Inc., 401 So.2d 1316 (Fla., 1981). In Wright, although the court did not specifically state that the basis of its finding of permanent total disability was a loss of wage-earning capacity merger, in our view that is the essence of the ruling in that case.
Appellee has filed a motion to reissue mandate in this cause (which was recalled upon the filing of the second motion for rehearing) contending that the second motion for rehearing is not permissible. Florida Appellate Rule 9.330(b), relating to motions for rehearing or clarification, states as follows:
"A party shall not file more than one such motion with respect to a particular decision."
Here, in ruling upon appellant's first motion for rehearing, we found it necessary to, and did, change the entire basis for our previous ruling, writing a supplementary opinion in the case. Since that opinion changes the entire basis for the ruling of the first opinion, we, therefore, consider it to be a new decision to which a new motion for rehearing may be filed.
The motion for rehearing is denied.
SMITH, C.J., and ERVIN, J., concur.