418 So.2d 1008 (1982)
NEWMAN HEATING & BOILER REPAIR, INC., Appellant,
v.
James E. NEWMAN, Jr., Appellee.
No. AC-412.
District Court of Appeal of Florida, First District.
March 18, 1982.
Rehearing Denied September 1, 1982.
*1009 Victor M. Halbach, Jr., of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellant.
Stephen J. Pajcic, III, of Pajcic, Pajcic, Dale & Bald, Jacksonville, for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) challenge a compensation order contending that the deputy commissioner (deputy) erred in awarding the claimant permanent total disability (PTD).
The claimant is a welder and boilermaker who is the president and sole owner of the employer corporation. He sustained a serious compensable injury to his right knee in September of 1975 that has necessitated two operations and has resulted in a 50% permanent partial disability (PPD) of his right leg. Claimant had serious pre-existing long-term back trouble for which he had been hospitalized several times. Claimant had continued to draw a salary from the employer corporation to and including the hearing date. His salary in 1978 and 1979 was higher than in prior years.
The deputy awarded the claimant PTD benefits on grounds that his back condition had merged with the compensable knee injury, rendering him totally disabled. The E/C contends that the deputy erred in not limiting claimant to the benefits payable for a scheduled injury to his right leg. For a number of years the Florida Supreme Court has said that diminished earning capacity is not a criterion for determining a compensation award in a case involving a scheduled injury. Mims and Thomas Manufacturing Co. v. Ferguson, 340 So.2d 920 (Fla. 1976); Jewell v. Wood, 130 So.2d 277 (Fla. 1961); Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959). The only exceptions to this rule are where the scheduled injury causes disability or incapacity in some other part of the body, as set forth in Kashin v. Food Fair, 97 So.2d 609 (Fla. 1957), or where claimant's disability is total rather than partial so that § 440.15(3), Fla. Stat., governing PPD, does not apply. Henderson v. Sol Walker Co., 138 So.2d 323 (Fla. 1962). Here, there is no substantial competent medical evidence that the scheduled injury caused disability or incapacity in some other part of the body so as to bring this case within the exception set forth in Kashin. In response to a question whether claimant's back pain was related to his knee problem, the claimant's treating physician, Dr. McClear, testified "I believe it could be." When asked whether the claimant's knee injury would have any effect on claimant's *1010 back, Dr. McClear responded "I think it certainly could, yes." In Kashin, the doctor was of the opinion that the claimant "was suffering from a cardiac condition which was, in his opinion, probably brought on by the loss of blood and shock at the time of the original injury." (emphasis supplied) The court held that such a nebulous and speculative conclusion as to the causal relationship between the accident and the ultimate cardiac condition did not constitute substantial competent evidence that the industrial accident caused the cardiac condition. The language used by the doctor in Kashin was even less speculative and nebulous than that used by Dr. McClear. In this case there is no substantial competent medical evidence to show a relationship between the back trouble complained of by the claimant and his industrial accident. The lack of such evidence, together with the evidence that his back trouble had long pre-existed the industrial accident, makes it clear that this case cannot fit within the Kashin exception to the general rule on scheduled injuries. Additionally, the claimant's scheduled injury has not brought about a total disability which would permit a finding of PTD under the decision in the Henderson case. The alleged total disability found by the deputy was not based on the industrial accident and injury but on a combination of his industrial injury and his previous back problems. The back trouble cannot be considered unless it was related to or caused by the industrial accident. In addition, the claimant is still working and drawing a base salary. This fact generally indicates only PPD, not PTD. The award of PTD is reversed and the cause is remanded to the deputy with instructions to enter an award for PPD in accordance with the scheduled injury the claimant received.
MILLS, J., concurs.
WENTWORTH, J., dissents.
WENTWORTH, Judge, dissenting.
The record in my opinion substantiates the deputy's conclusion that "the compensable physical impairment resulting from the aforesaid direct injury and dual aggravations merged with the pre-existing physical impairment of Claimant's two aforesaid diseases to render Claimant permanently totally disabled ... as the result of a total loss of wage earning capacity in the open labor market." Because the basis for the award is economic and not anatomic loss, and because claimant's wages from his dissolving business do not support existence of open market earning capacity (also negated by other evidence), I would affirm the award in this case without reaching the question of whether the injury was scheduled or body-as-a-whole as a result of aggravation of pre-existing disease.

ON PETITION FOR REHEARING
THOMPSON, Judge.
The claimant filed a motion for rehearing contending that in reversing the deputy's award of permanent total disability (PTD) benefits, this court overlooked its decision in Dade Federal Savings & Loan Association v. Smith, 403 So.2d 995 (Fla. 1st DCA 1981), and the Supreme Court case of Wright v. Gulf and Western Food Products, 401 So.2d 1316 (Fla. 1981). Although Dade Federal was not cited in claimant's original brief, it was not overlooked. Neither was Wright, which was cited and extensively argued. It might appear from a reading of the original majority opinion in this case that there is conflict between this case and the decisions in Dade Federal and Wright, but a review of those cases and similar cases reveal factual distinctions that render them inapplicable to this case.
The language in the original opinion that may have created some apparent conflict, to wit: "The alleged total disability found by the deputy was not based on the industrial accident and injury but on a combination of his industrial injury and his previous back problems. The back trouble cannot be considered unless it was related to or caused by the industrial accident." is stricken as it may be construed to mean that a combination of the factors which existed in Wright and Dade Federal would not support a finding of PTD or permanent partial disability greater than the scheduled disability.
*1011 Here, the claimant is a skilled welder and boiler maker who is president and sole owner of the employer corporation. Although claimant has only an eleventh grade education, he has a "high average" I.Q., and sufficient business acumen to have organized and successfully operated his own closely held corporation for some 20 years. He has extensive experience in repairing, servicing and replacing boilers, in selling and installing boilers and related equipment, and in managing his business and supervising his employees in the performance of their duties. The claimant has continued to operate his business since sustaining his industrial injury in 1975, and has continued to earn an income from his business. Although claimant's pre-existing physical condition, in combination with the disability resulting from his industrial accident, has rendered him incapable of engaging in many of the physical activities which he previously performed in the operation of his business, his condition has not prevented him from operating the business, from supervising and directing the activities of his employees, or from selling boilers and related equipment.
Wright and other similar cases are factually distinguishable because in those cases a combination of factors including physical condition, age, industrial history, education, job skills, and inability to obtain work combined to result in total loss of wage earning capacity making an award of PTD appropriate.
Neither this case nor Wright, Dade Federal, or other similar cases involved true merger as defined in Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla. 1974). The sole question presented for decision in this case is whether or not the claimant, by reason of a combination of the various factors influencing employability, sustained a total loss of wage earning capacity that would entitle him to a PTD rating.
To summarize briefly, the courts have generally approved PTD awards when the claimant's industrial injury, in combination with other factors such as age, education, lack of job skills, training, and pre-existing physical conditions, together with inability to obtain employment, renders the claimant PTD. In Wright, the claimant "was a 60-year-old black man with no formal education who started working on a farm at the age of eight, who could neither read nor write, could not make change, and had been, missing his left arm since the age of fifteen." Id. at 1317. He was unemployable in the existing labor market. The Supreme Court held that the combination of all the factors which influenced the claimant's unemployability supported the finding of the industrial claims judge that the claimant was PTD. The following quotation from Wright, in which the Supreme Court reviewed similar cases in support of its decision, reveals that those cases involved facts relating to age, education, training, ability to perform only manual labor, and physical conditions including amputation that render the claimant unemployable and PTD:
In Henderson v. Sol Walker and Company, 138 So.2d 323 (Fla. 1962), this Court stated that loss of wage-earning capacity must be determined in accordance with the facts of the case and that relevant considerations included physical condition, age, industrial history, education, and inability to obtain work. In that case, the claimant was an illiterate fifty-seven-year-old black man with a second-grade education and no formal or technical training. The work-related injury he suffered resulted in amputations of his right foot, his sole physical impairment. However, we held that the combination of all factors, including the inability of the employment service to place claimant in a job in his employment category, made an award of permanent total disability appropriate.
In other cases, we have reached a similar conclusion. In Florida State Turnpike Authority v. Garvey, 234 So.2d 354 (Fla. 1970), we held that a work-related injury to the knee creating a twenty-five per cent functional disability merged with previous disabilities (amputations of right hand and left leg) to result in a permanent *1012 total disability. In Hogan v. Central Sand Company, 141 So.2d 576 (Fla. 1962), the claimant, who was an illiterate laborer capable of performing only manual labor, suffered a work-related injury resulting in amputation of the right leg below the knee. In reversing the order of the Commission awarding an eighty-five per cent wage-earning capacity disability, we held that a permanent total disability was appropriate since claimant fit into a class embracing those who could not uninterruptedly do even light work owing to physical limitations. In Ross v. Roy, 234 So.2d 99 (Fla. 1970), we reversed a decision by the Commission which failed to award a permanent total disability. Claimant, who was sixty-three years old and had only a third-grade education, had suffered a work-related injury to his leg, which caused him to need the assistance of a cane for ambulation and precluded his standing for more than fifteen or twenty minutes at a time. We held, upon review of the totality of the evidence, including the nature and extent of anatomical disability as it related to age, education, and employment history (manual type labor), that a "reasonable stable labor market commensurate with claimant's ability to perform regular employment services is unlikely to exist". Id. at 101. (emphasis supplied)
Id. at 1317-18.
In Dade Federal, the claimant was 56 years old, was obese weighing 280 pounds, had degenerative arthritis in her knees, required the assistance of a cane to walk prior to her industrial accident, had experience only as a cleaning woman, and after the industrial accident was in such condition that she could not perform even light and sedentary employment. Although she had only a 5% disability of the leg from the industrial accident, this court upheld the deputy's finding that she sustained a 75% disability of the body as a whole based on loss of wage earning capacity.
Here, the claimant does not approach having the degree of physical or educational handicaps and the lack of job skills which rendered the claimants in the above cited cases totally or almost totally disabled because of loss of wage earning capacity. Nor does he have the lack of employability which the court found in all cases allowing PTD. On the contrary, the claimant was employable and, in fact, was employed.
For the foregoing reasons Wright, Dade Federal, and similar cases relied on by the appellee are not applicable and the petition for rehearing is denied.
MILLS, J., concurs.
WENTWORTH, J., dissents.
WENTWORTH, Judge, dissenting.
I would affirm because I believe we misconceive our function when we disregard those parts of the voluminous record which support the deputy's determinations that claimant has "a total loss of wage earning capacity in the open labor market";[1] that current monies from his boiler business were largely distributions upon liquidation having no probative effect other than sheltered short term employment[2] in the business he was attempting to sell; that his job search[3] showed he was not "reluctant to re-enter the job market"; and that employer/carrier's remedy was against the Special Disability Trust Fund for any excess compensation attributable to claimant's pre-existing osteoarthritis and degenerative disc disease.
*1013 The term "merger" is in my opinion properly used in this case in both the "general sense of a combination ... of all the factors which influence claimant's employability,"[4] and in the medical sense based on the physician's statement that claimant's particular "impairment of the right lower extremity affects his total body function," and resulted in a permanent change in gait and dual aggravations described in the order.
NOTES
[1] Among relevant factors were his age (61), lack of high school education, and inability to walk unaided or perform any of the physical activity which constituted his lifelong method of operating the boiler maker's business. Cf. Larson, Workmen's Compensation Law, § 57.51, et seq.
[2] Evidence includes eighteen pages of testimony by an accountant experienced as a business consultant, concluding from analysis of claimant's company records that to pay his salary since surgery in 1979 "He has just borrowed money from the company ... it's certainly not for what he's doing for the company now. It has to [have] been on past good will."
[3] Some twenty applications for varied jobs over a year's time achieved no results, and a vocational expert opined that "he has no potential to compete in [the local] market."
[4] Wright v. Gulf and Western Food Products, 401 So.2d 1316 (Fla. 1981); Dade Federal Savings & Loan Association v. Smith, 403 So.2d 995 (Fla. 1st DCA 1981).