461 So.2d 985 (1984)
SABRE MARINE and Iowa National Mutual Insurance Company, Appellants,
v.
Vera Mae FELICIANO, Appellee.
No. AY-301.
District Court of Appeal of Florida, First District.
December 17, 1984.
Bernard J. Zimmerman of Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, for appellants.
Thomas R. Mooney, Orlando, for appellee.
THOMPSON, Judge.
The employer/carrier (E/C) appeal an order awarding temporary total disability (TTD) benefits as well as past and future medical care and treatment. The principal contention of the E/C is that the claimant's present disability and need for medical treatment are not causally related to her industrial accident. We agree and reverse.
The claimant is a 42 year old mother of six children who is moderately overweight. She sustained a compensable injury on August 27, 1982, when a box of material she was attempting to remove from a shelf fell onto her left leg and hip, causing her to fall to the floor, striking her right knee. The authorized treating physician, upon initial examination of claimant, diagnosed lumbosacral strain and sprains of the knee and *986 thumb. He noted that claimant had some diffuse swelling about the knee, and that there was also swelling in her lower leg and foot. A consulting orthopedic physician who saw claimant on October 27, 1982 felt that the problems with claimant's knee, back and thumb were resolving satisfactorily. However, he noted that claimant had a possible sprained ankle and a possible venous insufficiency of the right leg. Being uncertain as to the etiology of the swelling in claimant's lower leg and ankle, this orthopedist recommended that she receive a vascular evaluation. Although the precise date the vascular evaluation was performed cannot be ascertained from the record, there is evidence that such an evaluation was performed, and that it yielded negative results.
In an order entered on October 7, 1983, the deputy commissioner (deputy) found that claimant had reached maximum medical improvement from an orthopedic standpoint and that there was no evidence that she had any permanent impairment as a result of her industrial accident. Accordingly, he denied her claim for TTD benefits for the period after June 24, 1983. On October 9, 1983, the claimant was seen by Dr. Bowen, a general surgeon to whom she was referred by her authorized treating physician. Dr. Bowen hospitalized the claimant, with an admitting diagnosis of causalgia, "probably secondary to ... probable deep vein thrombophlebitis of the right leg." During the ensuing six day hospitalization, tests were administered for the purpose of diagnosing or ruling out thrombophlebitis or other vascular disease. Among these tests was a venogram, which, according to the testimony of Dr. Bowen, is the most accurate test for diagnosing thrombophlebitis. All of the tests, including the venogram, yielded negative results. Following the hospitalization, Dr. Bowen continued to provide care and treatment for claimant's causalgia syndrome.
The claim at issue in this appeal was for benefits for the TTD associated with claimant's causalgia syndrome, as well as for past and future medical treatment therefor. The only medical evidence which in any manner tended to establish a causal relationship between claimant's industrial accident and her causalgia syndrome was that given by Dr. Bowen in deposition. Dr. Bowen testified that although the causes of causalgia syndrome are unknown, the disease can be triggered by neural damage or by venous insufficiency. He indicated that the swelling in claimant's leg was the result of the causalgia syndrome. He testified that the negative test results obtained during claimant's hospitalization in October 1983 proved that she did not have thrombophlebitis at that time, but he opined that she had had thrombophlebitis at some point in the past and that the sequelae of the thrombophlebitis were chronic venous insufficiency and resulting causalgia. He testified that thrombophlebitis can be caused by trauma, by excessive standing, by obesity, or by venous anomolies, and he indicated that a 42 year old female who had had six children and was overweight would be more subject to episodes of thrombophlebitis than would the average person.
When first asked whether the thrombophlebitis which he believed claimant had suffered at some time in the past was caused by the accident, Dr. Bowen indicated that the doctors who treated claimant immediately after the accident would be in a much better position to answer the question. In his second response to questioning concerning a possible causal relationship between the accident and the condition for which he was treating the claimant, i.e., the causalgia, Bowen stated "there is a possibility it could be related but, you know, I can't prove that." (e.s.). He indicated that if the claimant had had thrombophlebitis as a result of the industrial accident, the condition should have been diagnosed by the doctor who had performed the prior vascular evaluations. On cross-examination, the doctor expressly stated that his opinion that a blood clot had formed as a result of the injury and that the clot had ultimately caused the causalgia was mere speculation. On redirect examination, claimant's counsel again attempted to formulate a hypothetical question which would lead the doctor to *987 testify that the probable cause of claimant's causalgia syndrome was the industrial accident. The hypothetical question did not make any reference to the fact that a vascular evaluation performed after the accident, but before Dr. Bowen first saw the claimant, had yielded negative results. The posing of this hypothetical resulted in the following exchange:
DR. BOWEN: In the hypothetical case you described, that would be the possibility, a definite possibility that its probable that it is related to her accident.
CLAIMANT'S COUNSEL: You understand the difference between possibility and probability don't you?
DR. BOWEN: Not in your terms.
CLAIMANT'S COUNSEL: Probability is more than 50%; possibility is less than 50%. Under those circumstances are we talking ...
DR. BOWEN: Let's say probably in that case you're describing.
On recross-examination, the doctor stated that the fact that the doctors who saw claimant before he began treating her found no phlebitic condition "would make me think something happened in the interim." He again expressly stated that his opinion that there might be a relationship between the accident and claimant's causalgia syndrome was speculation.
As noted above, Dr. Bowen's testimony was the only medical evidence which even suggested that there might be a causal connection between claimant's industrial accident and the causalgia syndrome diagnosed by Dr. Bowen more than 13 months after the accident. Portions of the above quoted testimony of Dr. Bowen, if taken out of context, could lead a trier of fact to conclude that the doctor believed that there was a reasonable medical probability that a causal relationship existed between the accident and the causalgia syndrome. However, Dr. Bowen's evidence, considered in its entirety, was clearly insufficient to establish the existence of the causal relationship.
Where only a single medical expert testifies concerning a particular medical question, and where that expert's testimony is vague, uncertain, or ambiguous, the deputy should refrain from relying on isolated portions of the testimony and instead should consider all of the testimony and attempt to distill from it the essence of what the expert is attempting to say. Cintas Corporation v. Price, 424 So.2d 900 (Fla. 1st DCA 1982). Although we are reluctant to reverse a finding of fact made by the deputy based upon his evaluation of the testimony of a witness, and although we would not do so were this a case where the deputy had had to choose between the opinions of two or more experts whose opinions conflicted, we are of the opinion that in this particular case no reasonable person could conclude other than that the essence of Dr. Bowen's testimony was that he believed that the claimant could have suffered an episode of thrombophlebitis as a result of her industrial accident, and that the thrombophlebitis could have precipitated her causalgia. In this regard, we note that here, as in Cintas Corporation v. Price and Haga v. Clay Hyder Trucking Lines, 397 So.2d 428 (Fla. 1st DCA), pet. for rev. den., 402 So.2d 609 (Fla. 1981), the medical evidence was not presented live, so that this court is at no disadvantage in assessing and evaluating the evidence. Because the doctor admitted that his testimony as to causation was speculative, the cases of Kashin v. Food Fair, 97 So.2d 609 (Fla. 1957) and Newman Heating and Boiler Repair v. Newman, 418 So.2d 1008 (Fla. 1st DCA 1982), pet. for rev. den., 429 So.2d 7 (Fla. 1983) require reversal of the deputy's implicit determination that claimant had carried her burden of proving a causal relationship between her compensable injury and her causalgia syndrome.
Additionally, we note that the hypothetical question by which claimant's counsel was finally able to elicit the doctor's equivocal and ambiguous testimony concerning causation failed to include certain facts which the doctor himself subsequently testified were relevant to the question of causation. An expert's opinion which is *988 based on an incorrect or incomplete hypothetical cannot constitute competent substantial evidence. Dade Property Management Inc. v. Lazo, 418 So.2d 393 (Fla. 1st DCA 1982); Tallahassee Coca-Cola Bottling Company v. Parramore, 395 So.2d 275 (Fla. 1st DCA 1981). For the foregoing reasons, the order on appeal must be, and hereby is, REVERSED.
BOOTH and SMITH, JJ., concur.