288 So.2d 209 (1974)
William H. CHAFFEE, Petitioner,
v.
MIAMI TRANSFER COMPANY, INC., et al., Respondents.
No. 43568.
Supreme Court of Florida.
January 9, 1974.
*210 C.E. Miller of Miller & Byrne, Orlando, for petitioner.
Monroe E. McDonald of Sanders, McEwan, Mims & McDonald, Orlando, for respondents.
DEKLE, Justice.
We review this cause upon petition for writ of certiorari directed to the Industrial Relations Commission, the petitioning claimant asserting that the Commission erred in that:
(1) it was held that there was not a "merger" between claimant's pre-existing disabled left hand and the disability caused to his right hand by a compensable accident;

*211 (2) the Commission erroneously substituted its conclusions for those reached by the JIC;
(3) there was competent substantial evidence that claimant sustained a permanent impairment of his wage earning capacity;

(4) claimant's change of employment was because of the disability suffered by way of the compensable accident; and
(5) the IRC erroneously dismissed the claim in full where certain awards to the claimant which had not been paid were not appealed.
Claimant is a 66-year-old heavy equipment mechanic with a high school education, who lost the thumb and index finger of his left hand many years ago. Despite this impairment, claimant was able to function as a heavy equipment mechanic for many years prior to the industrial injury here. Although he was unable to start a nut or bolt with the left hand, he testified that he could hold large objects with this hand and do detail work with it. On April 20, 1968, claimant caught his right hand in a machine on the employer's premises, resulting in fractures of portions of the ring and middle fingers on his right hand. Claimant was treated by Dr. Carducci, who performed surgery on claimant on two separate occasions. The claimant developed a contracture band in his right palm, known as Dupuytren's Contracture, but the compensable injury to this hand did not cause this, although there was testimony that the injury brought about the "proliferative phase" of the contracture. Dr. Carducci testified that claimant had reached maximum medical improvement on July 3, 1968, and that claimant had a 15% permanent partial disability of the middle finger of the right hand and a 15% permanent partial disability of the ring finger of this right hand. Claimant later underwent an operation in Michigan to relieve the contracture problem, which was apparently successful.
After recovering from the injury, claimant returned to work for his former employer at no reduced earnings and continued to work there for some period. Following the accident, claimant was given a helper and did more supervisory work than he had previously done. On one occasion a generator slipped from his hand, but claimant did not have any problems with the employer and could have maintained his employment there indefinitely, according to the testimony. Nonetheless, claimant left this position and went to Michigan. The reason for his leaving the position is in dispute, the employer contending that claimant intended to retire, while claimant asserts that he left the position because he was unable to do the work. After returning to Michigan, claimant secured work in a mainly supervisory capacity at a salary in excess of that which he had been receiving prior to his injury; he quit that job because he felt that he was not doing it properly, was dropping tools, and was unable to help the other men in the shop. At the time of the hearing, claimant was working in Michigan for his son-in-law picking up parts for a body shop and keeping the shop clean, at a salary of $35 per week. In addition, claimant was furnished living quarters, the fair value of which was $100 per month, for cleaning up his son-in-law's bar. Additionally, he was drawing social security benefits in the approximate amount of $184 per month and his wife was drawing about $68 per month in social security. The total income was in excess of his income prior to the accident in question. At the hearing, claimant testified that he now considered himself retired, and that he hadn't looked for any other work, in that he just wanted to supplement his social security payments.
At the hearing, Dr. Carducci converted the disability rating of the two fingers to a rating of 12% permanent partial disability of the right hand, over objection of the employer. Dr. Carducci then, again over the objection of the employer, rated the claimant's disability of "the body as a *212 whole" by considering both the 12% rating of the right hand and his rating of 65% permanent partial disability of the left hand. He thereupon concluded that claimant had sustained a 40% permanent partial disability of the body as a whole. The Judge of Industrial Claims accepted the disability ratings of both hands, found that the injury had "merged" with the prior disability of the left hand to cause disability materially and substantially greater than would have resulted from the industrial accident in question when considered alone, and found a 40% permanent partial disability of the body as a whole on the basis of physical functioning; the Judge then took into account such other factors as the claimant's age, educational background, industrial history and actual wage earnings subsequent to the loss, and concluded that claimant had sustained a 50% permanent partial disability based upon loss of wage earning capacity as a result of the industrial accident in question. As noted above, the IRC reversed the Judge's order and dismissed the claim in toto.
The following questions are raised for our determination:
(1) Whether the IRC erroneously dismissed the claim in toto where certain awards had not been appealed nor fully paid prior to the Commission's order?
(2) Whether the Judge erred as a matter of law in holding that there was a merger between the pre-existing disability of the left hand and the injury to the right hand?
(3) Whether there was competent substantial evidence to support the award of compensation for loss of wage earning capacity in view of the fact that claimant's combined income at the time of the hearing was greater than that prior to the accident and in view of the claimant's semi-retired status?
As to the first question, it is clear that the IRC erred in dismissing the claim in toto where the portions of the Judge's order awarding travel reimbursement, an attorney's fee and additional permanent disability benefits for the disability to the injured right hand of the claimant were not appealed to the Industrial Relations Commission. Perhaps the Commission did not intend that its dismissal "in toto" include the unappealed matters, but in any event claimant is entitled to receive these benefits which had not been paid as of the time the case was argued before this Court. Matters not raised in the application for review cannot properly be considered by the IRC. Wesley's Inc. v. Caramello, 156 So.2d 853 (Fla. 1963).
Accordingly, those portions of the order of the JIC awarding additional disability benefits due to the loss of the use of the right hand and the award of travel benefits must be reinstated and the claim remanded to the JIC for determination of the proper attorney's fee based upon these additional benefits, as well as any other benefits hereinafter granted by this order which were not voluntarily paid by the employer.[1]

EARNING CAPACITY
The issue as to the propriety of the Judge of Industrial Claims holding that there was a "merger" between the pre-existing disability of the left hand and the subsequent injury to the right hand necessitates a review of pertinent prior decisions. Employer contends that there can be no "merger" in the absence of a showing of loss of wage earning capacity, and further contends that there has been no showing of a loss of earning capacity in the instant case. Petitioner, on the other hand, contends that this is a proper situation for a "merger", in that the injury in question, when taken with the pre-existing disability, created a substantially greater degree of disability to the claimant, both as *213 to his physical functional abilities and his wage earning capacity, than would have been the case if there had been no pre-existing disability. In order to decide this issue, we must first determine whether "merger" may be allowed only where there is a loss of wage earning capacity and, if so, we must then determine whether the instant claimant has in fact shown the existence of such a loss of wage earning capacity.
We stated in Ball v. Mann, 75 So.2d 758 (Fla. 1954), that "disability", for purposes of Fla. Stat. § 440.15(3)(u), refers to a diminution of earning capacity resulting from an injury, rather than to the physical impairment itself, commenting that the two were not necessarily proportional. However, following that landmark opinion by our distinguished retired Justice E. Harris Drew, who authored so much of Florida's body of law in the workmen's compensation field, the Legislature, by Fla. Stat. § 440.15(3)(u), F.S.A. as amended (subsequent to Ball v. Mann), defines "disability" as "either physical impairment or diminution of wage earning capacity, whichever is greater." This definition is one which applies to permanent partial disabilities other than those scheduled specifically in the other portions of Fla. Stat. § 440.15(3), F.S.A. We observe that § 440.15(3)(i) deals with loss of the second (middle) finger, that subsection (3)(j) deals with loss of the third (ring) finger (the two injured here), that subsection (3)(a) deals with the loss of two or more digits, and that subsection (s) deals with partial loss or partial loss of use of a member. The injuries to the two fingers involved, if considered alone, might therefore be viewed as scheduled injuries, for which specific provision has been made by the Legislature, thus obviating any need to show loss of earning capacity.

RELATED INJURY
However as we indicated in Trieste v. Anchell, 143 So.2d 673 (Fla. 1962), when a scheduled injury results also in a loss of efficiency, pain or involvement of some other part of the body, not included in the specifically scheduled losses under § 440.15(3), the claimant is not restricted to benefits related only to the scheduled injury. In that case, an injury to the claimant's foot also involved his back and ankle, and we held that benefits awardable could not properly be limited to the amount scheduled for injury to the foot alone. Similar results have been reached in other cases of an injury which involved other portions of the body, as, for instance, a shoulder-hand syndrome. See Kashin v. Food Fair, 97 So.2d 609 (Fla. 1957). It can be seen from these cases, and others of like nature, that the fact that an industrial injury falls within the literal ambit of the specifically scheduled injuries of the statute does not necessarily make the statutorily-prescribed amount of compensation benefits exclusive. Unlike the instant case, however, those cases involved a single injury which itself caused a loss of efficiency in other portions of the body, giving rise to a claim that the particular claimant's loss of wage earning capacity should be considered, rather than the claimant being limited strictly to the statutorily prescribed schedule.

"MERGER"
The question thus arises as to whether the scheduled compensation benefits are necessarily exclusive where a scheduled injury befalls a workman with a pre-existing disability, or whether such an injury may, in appropriate circumstances, "merge" with the pre-existing disability so as to fall within the intent of F.S. § 440.15(3)(u), F.S.A. The employer here concedes that "merger" can occur between a compensable injury and a pre-existing disability, but argues that "merger" can occur only if there is a showing of loss of wage earning capacity.
The term "mergers" appears only in the disability fund statute, § 440.49. We do not find the word "merger" in the statutes in relation to "a merger of injuries," as it *214 has come to be loosely used in connection with other injuries. The consideration of such joint injuries or related other injuries connected with an immediate one under consideration, seems to have given rise to the rather descriptive term of "merger" in this connection, and it may be a very useful reference, but it is to be borne in mind that this terminology is merely descriptive and not of statutory origin, when it is considered in relation to other injuries. Perhaps we have adapted the use of "merger of injuries" from testimony of doctors in some of these instances. To the medical mind in assessing the disability, the separate injuries are understandably referred to as "merging" in arriving at the percentage of disability resulting overall. It is actually more appropriate from the legal standpoint to consider the separate "new" injury as one which is "super added" or "beyond the ambit of a scheduled injury", and like terms used in former opinions such as Kashin, supra, and Jewell v. Wood, 130 So.2d 277 (Fla. 1961).
Thus it appears that the requirement of an explicit showing of a "loss of wage earning capacity," while it is a usual test[2] is not an essential predicate to a consideration of earlier and present, related injuries. "Physical impairment" in F.S. § 440.15(3)(u), F.S.A. would be an adequate basis for an award.
F.S. § 440.15, F.S.A. is the only statutory basis upon which compensation for disability may be made in the instant case. Inasmuch as only permanent partial disability is involved, the provisions of subsection (3) must govern. This subsection provides for specified payments for specific compensable injuries, and then provides in § 440.15(3)(u) that:

"In all other cases in this class of disability the compensation shall be sixty percent (60%) of the injured employee's average weekly wage for such number of weeks as the injured employee's percentage of disability is of three hundred fifty (350) weeks; provided, however, that for the purpose of this paragraph `disability' means either physical impairment or diminution of wage earning capacity, whichever is greater." (emphasis added)
Some statutory basis must exist for the computation of any workmen's compensation award, and F.S. § 440.15, F.S.A. provides the only place for finding such a basis here. If compensation may be based on a "merger" of disabilities in appropriate circumstances (as the employer has conceded), the basis must be found in § 440.15. And if the "merger" is between disabilities included in the schedule as separate items but not as two disabilities joined together as a "scheduled" injury (as for instance a hand and a leg) the statutory basis for the award must perforce be found in § 440.15(3)(u) which deals with "all other cases".

BASIS OF AWARD
If, then, the award of compensation benefits in "merger" cases (if no "scheduled" item) is to be determined under § 440.15(3)(u), we must look to that section to determine how benefits thereunder are to be computed. In doing so, we find that the section defines disability as the greater of either loss of wage earning capacity or of physical impairment. Thus, an injury compensable under subsection (3)(u) producing a 10% physical impairment and no loss of wage earning capacity would require compensation based on the 10% physical impairment. If the injury in question were a back injury, which is clearly within the scope of subsection (3)(u), no one would quarrel with this proposition; the statute is abundantly clear. And since a "merger" situation must also fall within § 440.15(3)(u), the same results must follow: a merged injury causing 10% physical impairment and no loss of wage earning capacity should be compensated on the basis of the 10% physical *215 impairment, under the express terms of the statute, despite the lack of any loss of wage earning capacity.
Under the employer's argument that "merger" can exist only where there is some loss of wage earning capacity, a workman who was 99% permanently disabled on a physical impairment basis would receive compensation on a 99% basis even though he had a loss of wage earning capacity of only 1%, being entitled to "the greater" of the two. But a claimant would get nothing for the effects of the "merger" if he had not had that 1% loss of wage earning capacity. Admittedly, this is an extreme example, but it demonstrates the true impact and fallacy of the employer's contention.
To say, as the employer would have us do, that in merger cases the true meaning of § 440.15(3)(u) is that disability for purposes of that section is the greater of physical impairment or loss of earning capacity only if there is a loss of earning capacity is to invoke a limitation or to add words to the statute not placed there by the Legislature. This we may not do.[3] We must therefore conclude that, while he may, it is not necessary for a claimant to show a loss of wage earning capacity in order to receive compensation benefits for the effects of a merger between a compensable injury and a pre-existing disability.
If the claimant can show that the subsequent compensable injury caused pain, loss of efficiency, or other involvement of a portion of the body not within the scope of the specifically scheduled disability, thus causing the resulting disability to be substantially and materially greater than would be the case if the second injury were considered alone, compensation benefits must be payable under § 440.15(3)(u), and must be based upon either loss of earning capacity or physical functional impairment, whichever is greater. Applying this rule to the case before us, we hold that Claimant Chaffee was not required to show (although he did) a diminution in his ability to earn in order to receive compensation benefits for the effects of the "merger" of the injury to his right hand with the pre-existing disability of his left hand.
The benefits provided for the effect of the merger of the two disabled hands must, of course, be based upon the greater of (1) claimant's loss of wage earning capacity, or (2) claimant's physical functional impairment. F.S. § 440.15(3)(u), F.S.A. It therefore follows that, if there was competent substantial evidence in accordance with logic and reason to support the finding of the Judge of Industrial Claims that claimant suffered a 50% loss of wage earning capacity, the Industrial Relations Commission erred in dismissing the claim and claimant is entitled to compensation on a 50% loss basis regardless of the extent of physical impairment he suffered.
The factors to be considered in determining loss of earning capacity have been set forth in Ball v. Mann, supra. These elements include the injured employee's physical condition, age, industrial history, education and inability to obtain the type of work which he can do insofar as affected by the injury. These elements were considered by the Judge in the instant case. Another element which must be considered, though not solely controlling, in determining loss of earning capacity is the actual wages earned by the claimant after the injury has occurred. The employer here places great emphasis on the fact that claimant's actual income as of the date of the hearing was greater than that prior to the accident. Claimant, in turn, points out that a portion of this income is obtained from Social Security, while the rest is earned in various employments given him by his relatives.

*216 COLLATERAL SOURCES
While the actual earnings of a claimant subsequent to the compensable accident are an important factor in determining the existence of a loss of wage-earning capacity, it is not a conclusive factor in and of itself. It is the loss of capacity to earn that governs. Social Security payments do not reflect any earning capacity, but are a collateral source of income; they should not be treated as showing an earning capacity. Similarly, monies received from relatives who employ a claimant, while a consideration, need not be treated on the same basis as wages paid by an unrelated employer if the family relationship is the dominant factor in the amount paid. Although wages paid by the claimant's relatives do have some bearing on earning capacity, the amounts involved should be viewed with considerable caution in view of the close relationships existing in such cases. We conclude that the fact that claimant's income at the time of hearing exceeded his wages prior to the accident does not refute the finding of a loss of wage earning capacity of 50%.
The employer additionally contends that the initial order was erroneous in that the claimant had voluntarily retired from the labor market. Suffice it to say that there was sufficient competent evidence to support the finding that the claimant did not voluntarily retire, but rather was forced to leave the labor market by reason of his inability to do the work he was equipped to do.
Reviewing the entire record, we hold that the finding of the Judge of Industrial Claims that Mr. Chaffee sustained a 50% loss of wage earning capacity due to the industrial accident in question was sustained by substantial competent evidence in accordance with logic and reason. The Industrial Relations Commission erred in determining to the contrary.
We therefore grant the writ of certiorari, reverse the order of the IRC and reinstate the order of the JIC, except insofar as the issue of attorney's fees is concerned. The cause is directed to be remanded to the Judge of Industrial Claims for a determination of the proper amount of attorney's fees to be awarded based upon such benefits as claimant has obtained in these proceedings and the several factors set forth in Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454 (Fla. 1968).
It is so ordered.
ERVIN, ADKINS, BOYD and McCAIN, JJ., concur.
CARLTON, C.J., and ROBERTS, J., dissent.
NOTES
[1] Such award of attorney's fees must, of course, be based upon the various factors set forth in Lee Engineering & Construction Co. v. Fellows, 209 So.2d 454 (Fla. 1968).
[2] Ball v. Mann, 73 So.2d 738 (Fla. 1945).
[3] State v. Barquet, 262 So.2d 431 (Fla. 1972); State v. Tindell, 88 So.2d 123 (Fla. 1956); Ervin v. Collins, 85 So.2d 852 (Fla. 1972).