Richard L. Dugger Secretary Department of Corrections
QUESTION: 1. Must the facility described in Item 2084, s. 2B, Ch. 90-209, Laws of Florida, be constructed and operated in accordance with all legal and judicial requirements imposed on the Department of Corrections and the department's own rules, policies, and procedures? 2. Pursuant to this legislation, is Gadsden County an agent of the Department of Corrections? 3. If Gadsden County is an agent of the department, what is the extent of the liability to the department for the county's actions? 4. Is the Department of Corrections a party to the lease purchase and management contracts described in Item 2084 (in apparent conflict with the plain language of the legislation), and must the department comply with provisions of these contracts which the department does not believe it is bound by? 5. What is the extent of the liability to the Department of Corrections under such contracts to which it is not a party? 6. Should the Department of Corrections act as a conduit under Item 2084 to pass funds appropriated by the Legislature to the county, or must the department take an active role in monitoring and ensuring that inmates are properly cared for and the contracts are properly performed? 7. If the Department of Corrections is more than a conduit, what are the standards to be used by the department in monitoring the facility? 8. If ss.944.105 and 944.710-944.719, F.S., do not apply, has the proviso language of Item 2084 changed or amended existing law on subjects other than appropriations making Item 2084 invalid? 9. Pursuant to Item 2084, does the State of Florida or Gadsden County take title to the facility, including all real property, once all lease purchase payments are made?
SUMMARY: 1. The Gretna facility must be constructed and operated in compliance with the American Correctional Association standards. In addition, it would be advisable for this facility to comply with the legal requirements imposed by the statutes, administrative rules, and case law on Department of Corrections' facilities. 2. The act does not operate to make Gadsden County an agent of the Department of Corrections although the county is made an agent of the state. 3. No response to this question is required. 4. The Department of Corrections is not made a party to lease purchase and management contracts entered into between Gadsden County and private parties by Item 2084 and the department is not required to comply with provisions of contracts to which it is not a party. 5. The Department of Corrections incurs no liability for failure to comply with the provisions of contracts to which it is not a party. 6. The Department of Corrections is not authorized to become actively involved in monitoring inmate care and contract compliance by the Gretna facility. 7. No response to this question is required. 8. Item 2084 is presumed to be constitutional and effective until a court of competent jurisdiction determines otherwise. 9. Item 2084 makes no provision for ownership of the Gretna facility after the completion of the lease purchase agreement.
Item 2084, s. 2B, Ch. 90-209, Laws of Florida, was enacted during the 1990 Legislative Session. Chapter 90-209 is the 1990 appropriations act. This particular appropriation provides $400,000 to fund two requests for proposals for private adult correctional facilities: $200,000 for the Department of Corrections to enter into a contract with a private vendor for construction and operation of a single cell facility; and another $200,000 is allocated to Gadsden County for a similar project.
Pursuant to the relevant portion of Item 2084:
 From the funds provided in Specific Appropriation 2084, $200,000 shall be provided to the Board of County Commissioners of Gadsden County, which shall be delegated, no other Provision of Law withstanding, sole and exclusive authority on behalf of the state, without consent of any agency of the state, to enter into a lease purchase agreement and a separate management agreement with a private vendor for a close security, single cell major institution to be located in close proximity to the City of Gretna.[1]
AS TO QUESTION 1:
Initially, I would note that, without some indication of what legal and judicial requirements you are concerned with, this office cannot categorically determine whether this facility must be so constructed and operated. Therefore, my comments will be of a general nature.
Pursuant to Item 2084, "[a]ll requests for proposals shall require compliance with American Correctional Association standards. The Request for Proposals shall invite innovation in the design construction and management of the facility . . . ." Thus, the Legislature expressed its intent that this facility be constructed and operated in compliance with the standards of the American Correctional Association. Nothing in the act requires that the Gretna facility be constructed or operated in compliance with the legal and judicial requirements which have been imposed on the Department of Corrections if these are other than the American Correctional Association requirements. Nor can this office read into this legislation a requirement that the facility comply with the rules, policies, and procedures promulgated by the department.[2]
Chapter 944, F.S., "The Florida Corrections Code of 1957," regulates the state correctional system. As defined therein, the "[c]orrectional system" means "all prisons and other state correctional institutions now existing or hereafter createdunder the jurisdiction of the Department of Corrections."[3]
(e.s.) Nothing in Item 2084 directs that the Gretna facility be created under the jurisdiction of the department. Rather, Item 2084 states that the Gadsden County Commission is "delegated, no other Provision of Law withstanding, sole and exclusive authority on behalf of the state, without consent of any agency of the state" to proceed.
Chapter 944, F.S., does make provision for the private operation of state correctional facilities.[4] However, as discussed above, it does not appear that the Gretna facility comes within the state correctional system. The statutory provisions in Ch. 944, F.S., appear to apply to situations in which the Department of Corrections enters into a contractual arrangement for the construction or operation of correctional facilities by private vendors.[5] As is specifically provided in Item 2084, "the Board of County Commissioners of Gadsden County . . . shall be delegated, no other Provision of Law withstanding, sole and exclusive authority on behalf of the state, without consent of any agency of the state, to enter into a lease purchase agreement and a separate management agreement . . ." for the Gretna facility. Thus, this facility would not appear to come within the scope of Ch. 944, F.S.
However, notwithstanding this conclusion, it may be advisable for the Gretna facility to comply with the legal requirements imposed by the statutes, administrative rules, and case law on facilities operated and managed by the Department of Corrections. It is clear that one of the purposes of this appropriation is to house prisoners under the custody and jurisdiction of the Department of Corrections. This purpose would be thwarted if the Department of Corrections is unable to use the Gretna facility for prisoner accommodation because of noncompliance with legal requirements imposed on the department.
For example, this office represents the Department of Corrections in the nineteen year old class action lawsuit Celestineo andCostello v. Dugger.[6] Outstanding agreements and orders in this case closely regulate permissible cell space, prison populations, and inmate medical care. If state prisoners are housed in the Gretna facility, it is conceivable that the federal court overseeing this ongoing lawsuit may consider this facility to be within the scope of this action and subject to these restrictions.
AS TO QUESTION 2:
The plain language of this legislation delegates to the Board of County Commissioners of Gadsden County the exclusive authority on behalf of the state to enter into certain contracts. Item 2084 specifically provides that such authority may be exercised "without consent of any agency of the state[.]"
Thus, while the county appears to be authorized to act as an agent of the state,[7] I cannot conclude, in light of the language of the act, that the Gadsden County Commission acts simultaneously as an agent of the Department of Corrections.
AS TO QUESTION 3:
No answer to this question is necessary in light of my response to Question Two.
AS TO QUESTION 4:
As discussed herein, the Board of County Commissioners of Gadsden County does not act as an agent of Department of Corrections in accomplishing the purposes of Item 2084. Nor is the department required to approve or pass upon the agreements entered into by the county commission pursuant to Item 2084. While this office is not aware of any commitments or agreements which the Department of Corrections may have entered into in this regard, based on the language of Item 2084, the department is not a party to the lease purchase and management agreements described in the act nor is the department required to comply with any such contractual provisions.
AS TO QUESTION 5:
I am aware of no legal theory which would subject the Department of Corrections to liability for failure to comply with contractual provisions entered into by another state agency, when it is not a party to such contracts and has not passed on or reviewed or approved such contracts or become otherwise involved in this process.
AS TO QUESTION 6:
Nothing in Item 2084 describes the role of the Department of Corrections in accomplishing the purposes of the act except to the extent that "[c]osts of the facility shall be recaptured through a per diem reimbursement formula under a contract to be entered between the Department of Corrections and the Board of County Commissioners."
A state administrative agency possesses no inherent power and may exercise only such authority as is expressly or by necessary implication conferred by law.[8]
Thus, in the absence of any specific legislative direction and with consideration for the Legislature's direction that the Gadsden County Commission enjoy independence in the creation, operation and management of the Gretna facility, the Department of Corrections should not take an active role in the functioning of the facility.
AS TO QUESTION 7:
No answer to this question is necessary in light of the answer to Question Six.
The Attorney General cannot declare any legislative act unconstitutional or advise any officer to disregard a legislative direction or mandate. On the contrary, such legislation is presumed to be constitutional and must be given effect until judicially declared invalid.[9] Thus, this office must presume the viability and constitutionality of Item 2084 until a court of competent jurisdiction determines otherwise.
AS TO QUESTION 9:
Nothing in Item 2084 addresses who will take title to the Gretna facility upon the completion of the lease purchase agreement.
While s. 944.716, F.S., does state that "the department shall assume control of a private correctional facility upon termination of the contract," as discussed above, the Gretna facility and the lease purchase and management agreements for the facility do not appear to fall within the scope of Ch. 944, F.S.
Thus, the issue of ownership of the Gretna facility when the contract is completed is not resolved or addressed by either Item 2084 or the Florida Statutes.
The numerous and substantial problems raised by your inquiry into the scope and interpretation of Item 2084, s. 2B, Ch. 90-209, Laws of Florida, strongly suggest that a reconsideration of this matter by the Legislature would assist both Gadsden County and the State of Florida.
[1] Specific Appropriation 2084 states, in part, that:
The Legislature finds that the area in close proximity to the City of Gretna is in the need of economic assistance. The Legislature further finds that siting a privately financed, designed, constructed, and managed close security, single cell major institution will benefit the local economy by providing jobs for local businesses and by providing jobs for the high number of unemployed minorities in the area.
[2] Cf., Chaffee v. Miami Transfer Company, Inc.,288 So.2d 209 (Fla. 1974) (the Court has no authority to supply additional words to or modify the meaning of a duly enacted statute); AGO's 87-43, 86-32, and 82-20.
[3] Section 944.02(1), F.S.
[4] See, ss. 944.710-944.719, F.S.
[5] See, e.g., s. 944.711, F.S. (department shall develop request for proposals to construct or construct and operate facilities of the department); s. 944.712, F.S. (private vendors must have qualifications and operations and management experience to carry out terms of contract); s. 944.714(3), F.S. (pursuant to terms of contract, private vendor shall design, construct, and operate private correctional facility in accordance with standards established by American Correctional Association and approved by the department; standards required under contract for operating a private correctional facility may be higher than American Correctional Association standards); s. 944.716, F.S. (detailed plan shall be provided by private vendor under which department shall assume control of private correctional facility upon termination of contract); s. 944.719(1), F.S. (department shall adopt rules specifying criteria for contractual arrangements and standards for operation of correctional facilities by private vendors); s. 944.719(2), F.S. (department shall appoint a contract monitor who shall document private vendor's adherence to contract).
[6] These are ongoing actions in the U.S. District Court for the Middle District of Florida the case numbers of which are 72-109-Civ-J-14 and 72-94-Civ-J-14.
[7] Cf., s. 20.03(11), F.S., which generally defines "[a]gency" to mean "an official, officer, commission, authority, council, committee, department, division, bureau, board, section, or another unit or entity of government"; and Part III, Ch. 941, F.S., the "Interstate Corrections Compact" which in s. 941.56, Art. IV(a), F.S., authorizes a receiving state "to act in that regard solely as agent for the sending state."
[8] See, e.g., Gessner v. Del-Air Corporation,17 So.2d 522 (Fla. 1944), Lee v. Division of Florida Land Sales and Condominiums, 474 So.2d 282 (5 D.C.A. Fla., 1985), AGO's 71-28, 75-299, 78-46, and 78-135.
[9] See, AGO's 77-99 and 78-64. Cf., State exrel. Watson v. Caldwell, 23 So.2d 855 (Fla. 1945), Adams Packing Association, Inc. v. Florida Department of Citrus, 352 So.2d 569
(2 D.C.A. Fla., 1977).