Kenneth B. Cuyler Collier County Attorney
QUESTION:
What procedure should be followed by Collier County in paying the medical bills of a neglected or abused child pursuant to s. 415.507(4), F.S.?
SUMMARY:
Collier County may contract or make arrangements with hospitals or other medical providers in the county to forward bills for payment for medical treatment of abused or neglected children pursuant to s. 415.507(4), F.S. There is no requirement that child protection teams act as intermediaries in this billing process and this direct arrangement would prevent problems with the confidentiality provisions of s. 415.5055(3), F.S.
I would note that you originally posed a number of questions relating to what constitutes permissible activities and the legal liability of child protection teams pursuant to provisions of Ch.415, F.S. Section 415.5055, F.S., provides that:
 The department [Department of Health and Rehabilitative Services] shall develop, maintain, and coordinate the services of one or more multi-disciplinary child protection teams in each of the service districts of the department. Such teams may be composed of representatives of appropriate health, mental health, social service, legal service, and law enforcement agencies.
Because these groups are created and their activities are directed by the Department of Health and Rehabilitative Services,[1]
questions relating to the legal liability of the child protection teams and a determination of their authorized activities should be directed initially to the department. In the event that the department cannot resolve such issues this office would consider a request from the Department of Health and Rehabilitative Services for an opinion on such matters.[2]
Section 415.507(1), F.S., provides in part that:
Any person required to investigate cases of suspected child abuse or neglect may take or cause to be taken photographs of the areas of trauma visible on a child who is the subject of a report.[3]
If the areas of trauma visible on a child indicate a need for a medical examination, or if the child verbally complains or otherwise exhibits distress as a result of injury through suspected child abuse or neglect, or is alleged to have been sexually abused, the person required to investigate may cause the child to be referred for diagnosis to a licensed physician or an emergency department in a hospital without the consent of the child's parents, legal guardian, or legal custodian. . . . Any licensed physician, or advanced registered nurse practitioner licensed pursuant to chapter 464, who has reasonable cause to suspect that an injury was the result of child abuse may authorize a radiological examination to be performed on the child without the consent of the child's parent, legal guardian, or legal custodian.
Thus, the statute requires medical examination for children when abuse or neglect is suspected.
The county in which the child is a resident is responsible for the initial costs of the examination of the allegedly abused child. The statute requires that the parents, legal guardian, or legal custodian of the child reimburse the county for the costs of the examination.[4]
According to your letter you perceive a possible problem with s. 415.5055(3), F.S., if the county receives billing information regarding medical treatment for abused or neglected children from a child protection team. This statute provides, in part, that:
All records and reports of the child protection team are confidential and exempt from the pro-visions of ss. 119.07(1) and 455.241, and shall not be disclosed, except, upon request, to the state attorney, law enforcement, the department, and necessary professionals, in furtherance of the treatment or additional evaluative needs of the child or by order of the court.
Thus, disclosure of such records is limited to those persons or agencies specifically set forth in the statute.[5]
Nothing in Ch. 415, F.S., requires that a bill for the initial examination of an allegedly abused child must be transmitted to the county from the medical services provider through the child protection teams established pursuant to s. 415.5055, F.S. This office has no authority to read such a requirement into the statute.[6]
By utilizing a direct billing arrangement between the medical services provider and the county, the confidentiality of records and reports of child protection teams required by s. 415.5055(3), F.S., would not be jeopardized. To facilitate this arrangement, it may be advisable that an initial medical examination be performed by a medical provider who is not part of the child protection team.
[1] And see, s. 415.503(5), F.S., which defines a "[c]hild protection team" to mean:
[A] team of professionals established by the department to receive referrals from the protective investigators and protective supervision staff of the children, youth, and families program and to provide specialized and supportive services to the program in processing child abuse and neglect cases. A child protection team shall provide consultation to other programs of the department and other persons on child abuse and neglect cases pursuant to s. 415.5055(1)(g).
[2] See, s. 16.01(3), F.S., and the Department of Legal Affairs Statement of Policy Concerning Attorney General Opinions.
[3] See, s. 415.504, F.S., providing that certain reports of child abuse or neglect are mandatory and establishing a central abuse registry and tracking system.
[4] Section 415.507(4), F.S. Compare, s. 415.1085(1), F.S., which provides that medical examinations performed and X rays taken of allegedly abused or neglected aged persons "shall be paid for by third-party reimbursement, if available, or by the subject or his guardian, if they are determined to be financially able to pay; or, if neither is available, the department [Department of Health and Rehabilitative Services] shall pay the costs within available emergency services funds."
[5] Where a statute sets forth exceptions, no others may be implied to be intended. See, Dobbs v. Sea Isle Hotel,56 So.2d 341, 342 (Fla. 1952); Biddle v. State Beverage Department,187 So.2d 65, 67 (4 D.C.A. Fla., 1966); Williams v. American Surety Company of New York, 99 So.2d 877, 880 (2 D.C.A. Fla., 1958).
[6] Cf., Chaffee v. Miami Transfer Company, Inc.,288 So.2d 209 (Fla. 1974) and AGO's 87-43, 86-32, and 82-20 (for the proposition that the Attorney General's Office has no authority to supply additional words to or modify the meaning of a duly enacted statute).