Mr. Randal M. Alligood Monroe County Housing Finance Authority Post Office Box 4961 Orlando, Florida 32801
Dear Mr. Alligood:
On behalf of the Housing Finance Authority of Monroe County, you ask substantially the following question:
Are transactions of the Housing Finance Authority of Monroe County subject to the Consultants' Competitive Negotiation Act, section287.055, Florida Statutes, and section 255.20, Florida Statutes, requiring that the award of construction contracts for public buildings be accomplished by competitive bids from contractors?
In sum:
The Housing Finance Authority of Monroe County is an agency or subdivision of the state and, as an agency that may employ professional service consultants, it falls within the scope of the Consultants' Competitive Negotiation Act and must follow the requirements of the act when it develops real property. Further, the authority must comply with section 255.20, Florida Statutes, in those cases where the authority is the owner of the public building, structure, or other public construction work.
You have requested assistance in determining whether the Consultants' Competitive Negotiation Act ("the CCNA") applies to a project in which the Monroe County Housing Finance Authority ("the Authority") is interested in participating. Under this plan a master developer will arrange for property to be sold to the Authority at a below-market land cost in exchange for the right to develop the property. The master developer will earn a developer's fee up to but not in excess of $3 million based on certain performance benchmarks. The master developer will not arrange for the sale of the land at the favorable price unless it has the opportunity to make the developer's fee and it has the ability to control the development process, including the selection of the contractor, architect, and engineer, in order to control the development expenses. It is your understanding that if the Authority does not agree to the master developer's terms, the Authority will be unable to acquire this property. Compliance with the master developer's terms would provide no scope of operation for the CCNA.
Initially, I must advise you that this office will not comment on the legality of particular actions of the Monroe County Housing Finance Authority. However, a discussion of the scope and applicability of the Consultants' Competitive Negotiation Act as applied to the activities of the Authority will address your concerns.
The Monroe County Housing Finance authority is organized pursuant to the "Florida Housing Finance Authority Law," Part IV, Chapter 159, Florida Statutes.[1] In enacting the law, the Legislature declared that the shortage of housing available at prices or rentals affordable to many people and families in this state constitutes a threat to the health, safety, morals, and welfare of Floridians. This shortage of affordable housing also deprives the state of an adequate tax base and requires the state to make excessive expenditures for crime prevention and control, public health, welfare, and safety, fire and accident protection, and other public services and facilities.[2]
The Legislature has determined that this shortage should be relieved "through the encouragement of investment by private enterprise and the stimulation of construction and rehabilitation of housing through the use of public financing and the provision of low-cost loans to purchase affordable housing."[3] Further,
"[t]he financing, acquisition, construction, reconstruction, and rehabilitation of housing and of the real and personal property and other facilities necessary incidental, and appurtenant thereto are exclusively public uses and purposes for which public money may be spent, advanced, loaned, or granted and are governmental functions of public concern."[4]
Thus, housing finance authorities may operate in a variety of capacities in order to accomplish the purposes of the act, i.e., they may serve exclusively as a financing avenue for buyers of affordable housing or they may act as a developer or rehabilitator of affordable housing. The provisions of the housing finance law are declared to be necessary and in the public interest.[5]
Each county in the state is authorized to create a housing finance authority by ordinance. These authorities are separate public bodies corporate and politic limited to carrying out only the powers granted in the act and exercising public and essential governmental functions.[6] Among the powers granted to these authorities is the power to sue and be sued; to make, amend, and repeal bylaws, rules, and regulations; to own real and personal property acquired through the use of surplus funds or through public and private partnerships; to purchase or make commitments to purchase or to make loans for the purposes of the act; to borrow money through the issuance of bonds for single-family housing and qualified housing developments; to make loans to lending institutions and directly to persons or families who otherwise could not borrow from conventional lending sources; and to make loans or grant surplus funds to corporations that qualify as not-for-profit corporations for the development of affordable housing.[7]
The Monroe County Housing Finance Authority was created pursuant to a 1979 Monroe County ordinance as a public body politic and corporate for the purposes described in Part IV, Chapter 159, Florida Statutes. It is vested by statute with all the powers generally exercised by a corporate body in carrying out the purposes for which it was created and may borrow money and issue revenue bonds to finance its projects and activities.[8]
In opinions applying the Consultant's Competitive Negotiation Act, this office has noted that the CCNA was designed to provide procedures for state and local governmental agencies to follow in the employment of professional service consultants to make the contracting for professional services more competitive and to require the employment of the most qualified and competent individuals and firms at fair, competitive, and reasonable compensation.[9] The CCNA applies to any agency subject to the act with the power or duty to contract for professional services as set forth in section 287.055, Florida Statutes (1995). This office has determined that the CCNA applies to various governmental entities, including a municipality in accomplishing the purposes for which a grant is received;[10] the state fair authority;[11] a county civic facilities authority;[12] a hospital taxing district;[13] a multi-county airport authority;[14] and a county housing authority.[15] The CCNA was enacted for the public benefit and should be interpreted most favorably to the public.[16]
In Attorney General Opinion 78-19, this office concluded that the Broward County Housing Authority was subject to the Consultants' Competitive Negotiation Act and was required to comply with the act in contracting for the professional services of architects, engineers, or registered land surveyors. Housing authorities are empowered to "prepare, carry out, acquire, lease and operate housing projects; to provide for the construction, reconstruction, improvement, alteration or repair of any housing project or any part thereof" and "to arrange or contract for the furnishing by any person or agency, public or private, of services, privileges, works, or facilities for, or in connection with, a housing project[.]"[17] Based on this grant of statutory power, the opinion noted that a housing authority was authorized to contract for those professional services contemplated by the CCNA and, as a type of special district, was an agency within the scope of the CCNA.
Similarly, the public purpose sought to be achieved by the CCNA would apply to transactions of the Monroe County Housing Finance Authority. This is particularly true where, as here, the statutory entity was created to carry out a public purpose — the ownership or facilitation of ownership of affordable housing using public funds — in which the professional services covered by the CCNA would be most needed.
Section 159.619, Florida Statutes, provides that a housing finance authority may not "unreasonably refuse to participate in the financing of any qualifying housing development upon request." However, this requirement does not authorize a housing authority to engage in activities, either directly or indirectly,[18] that would defeat the purposes and requirements of other applicable legal mandates, such as the CCNA. While the purposes for which the Monroe County Housing Authority is considering developing this project is commendable, this office is without authority to qualify or read into the statute an interpretation of the statute that would result in a construction that may seem more equitable under the circumstances presented by a particular factual situation.[19]
The First District Court of Appeal considered a similar situation in City of Lynn Haven v. Bay County Council of RegisteredArchitects, Inc.,[20] and determined that the procedures proposed by the city in that case "contravene legislative intent and undermine the effectiveness of the CCNA."[21] In that case, the City of Lynn Haven proposed to build a new public safety building. A set of blueprints was obtained from a private contractor and an invitation to bid for construction was published. The city advised bid applicants that the successful bidder would have to provide architectural drawings for the project before obtaining a building permit. The council of registered architects filed a complaint against the city for injunctive relief alleging that the city was attempting to circumvent the CCNA by allowing the contractor with the low bid to select and hire an architect to prepare, sign, and seal the architectural drawings and direct the project.
In considering the city's bidding procedures and the appellees' right to challenge the city's actions, the court stated:
"Section 287.001, Florida Statutes, states the legislative intent in establishing competitive negotiations for the procurement of services: an intent to further open competition which is a basic tenet of public procurement; to reduce the appearance and opportunity for favoritism; and to ensure that contracts are awarded equitably and economically. It is uncontested that if the City had directly contracted with an architect for professional services without complying with the CCNA, appellee's members could have challenged the contract as going beyond the City's statutory power. No valid basis appears for differentiating as to the standing requirements here, where the City attempts to do indirectly what it cannot do directly."[22]
The court concluded that the city's bidding procedure would not effectuate an equitable distribution of contracts among the qualified firms pursuant to the CCNA nor would it assure that the architectural fees that the city would pay indirectly would be fair, competitive or reasonable as required by the statute. It appears that these criticisms may also be made of the proposed plan of the Monroe County Housing Finance Authority, that is, the proposed arrangement would not effectuate an equitable distribution of contracts and would not assure that fees paid for professional services, although paid indirectly, would be fair or competitive.
In light of these considerations, it is my opinion that the Monroe County Housing Finance Authority is an agency within the scope of the Consultant's Competitive Negotiation Act and must comply with the requirements of that act when it develops property to accomplish the purposes for which it was created. This is not to suggest that the authority is required to follow the mandates of the CCNA when it is acting as a financial resource for making loans or issuing bonds for the purchase of existing projects. However, in those instances where the authority acts as the developer of property, either directly or indirectly, it must comply with the requirements of the Consultant's Competitive Negotiation Act.
You also ask whether the Monroe County Housing Finance Authority, as a special district pursuant to Chapter 189, Florida Statutes, is subject to the procurement procedures of section 255.20, Florida Statutes. This statute requires that:
"A county, municipality, special district as defined in chapter 189, or other political subdivision of the state seeking to construct or improve a public building, structure, or other public construction works must competitively award to an appropriately licensed contractor each project that is estimated in accordance with generally accepted cost-accounting principles to have construction costs of more than $200,000. As used in this section, the term "competitively award" means to award contracts based on the submission of sealed bids, proposals submitted in response to a request for proposal, proposals submitted in response to a request for qualifications, or proposals submitted for competitive negotiation. This subsection expressly allows contracts for construction management services, design/build contracts, continuation contracts based on unit prices, and any other contract arrangement with a private sector contractor permitted by any applicable municipal or county ordinance, by district resolution, or by state law. For purposes of this section, construction costs include the cost of all labor, except inmate labor, and include the cost of equipment and materials to be used in the construction of the project. . . . [T]he county, municipality, special strict, or other political subdivision may establish, by municipal or county ordinance or special district resolution, procedures for conducting the bidding process."[23]
While this section does not contain a definition of the term "public building" for purposes of section 255.20, a definition of the term is contained in this chapter. Section 255.551(14), Florida Statutes, defines a "public building" as "any building owned by any state agency."
Clearly this definition is too restrictive for purposes of section255.20, Florida Statutes, which contains references to counties, municipalities, special districts and other political subdivisions. However, in the absence of any legislative expression on this matter, a public building for purposes of section 255.20, Florida Statutes, may be understood to mean any building owned by any county, municipality, special district or other political subdivision.
Thus, to the extent that the Monroe County Housing Finance Authority will be the owner of any building, structure, or public construction work, it is my opinion that the authority would be subject to the requirements of section 255.20(1), Florida Statutes, requiring competitive bids for such construction if the cost will be more than $200,000.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 159.601, Fla. Stat. (1995), for the title of the act.
[2] Section 159.602(1), Fla. Stat. (1995).
[3] Section 159.602(2), Fla. Stat. (1995).
[4] Section 159.602(3), Fla. Stat. (1995)
[5] Section 159.602(5), Fla. Stat. (1995).
[6] See, ss. 159.604 and 159.608, Fla. Stat. (1995).
[7] Section 159.608(1), (2), (3), (4), (8) and (10)(a), Fla. Stat. (1995). And see, Op. Att'y Gen. Fla. 90-64 (1990), discussing the powers of housing finance authorities.
[8] See, s. 159.612, Fla. Stat. (1995), relating to the issuance of revenue bonds by housing finance authorities.
[9] See, e.g., Ops. Att'y Gen. Fla. 73-216 (1973), 74-308 (1974), and 75-56 (1975).
[10] See, Op. Att'y Gen. Fla. 91-34 (1991).
[11] See, Op. Att'y Gen. Fla. 83-20 (1983).
[12] See, Op. Att'y Gen. Fla. 74-308 (1974).
[13] See, Op. Att'y Gen. Fla. 74-89 (1974).
[14] See, Op. Att'y Gen. Fla. 75-56 (1975).
[15] See, Op. Att'y Gen. Fla. 78-19 (1978).
[16] Cf., Canney v. Board of Public Instruction of AlachuaCounty, 278 So.2d 260, 263 (Fla. 1973).
[17] Citing s. 421.08(2) and (3), Fla. Stat. (1977).
[18] Cf., Green v. Galvin, 114 So.2d 187 (Fla. 1st DCA 1959),cert. denied, 116 So.2d 775 (Fla. 1959), appeal dismissed,117 So.2d 844 (Fla. 1960), for the proposition that a public official cannot do indirectly that which he is prohibited from doing directly.
[19] Cf., Chaffee v. Miami Transfer Company, Inc.,288 So.2d 209 (Fla. 1974), and Johnson v. Taggart, 92 So.2d 606 (Fla. 1957).
[20] 528 So.2d 1244 (Fla. 1st DCA 1988).
[21] Id., at 1246.
[22] City of Lynn Haven, at 1246.
[23] Section 255.20(1), Fla. Stat. (1995). And see, s.255.20(1)(a), Fla. Stat. (1995), for exceptions to applicability of subsection (1).