Dear Mr. Ford:
On behalf of the Florida Wireless 911 Board, you have asked for my opinion on substantially the following questions:
 1. Is the Florida Wireless 911 Board authorized to sue providers of E911 service who do not remit the appropriate fee to the board?
 2. Are providers still responsible for remitting the E911 wireless fee if they can demonstrate that they do not have the technology to determine whether a wireless service customer has a sufficient positive balance as of the last day of each month?
 3. Were prepaid wireless providers required to collect and remit the Wireless E911 fee to the board prior to the passage of Chapter 2003-182, Laws of Florida?
Section 365.172, Florida Statutes, is the "Wireless Emergency Communications Act." The Legislature enacted this provision in recognition of the complexities that wireless communications service creates for providing emergency 911 services. The act reflects the Legislature's concern that adequate funding be available to wireless telephone service providers and counties that operate 911 and E911 systems to recover the costs involved in designing, purchasing, installing, testing, and operating the enhanced facilities, systems, and services necessary to comply with federally mandated E911 services.[1]
In adopting the Wireless Emergency Communications Act, the Legislature expressed its intent to:
 "1. Establish and implement a comprehensive statewide emergency telephone number system that will provide wireless telephone users with rapid direct access to public safety agencies by dialing the telephone number `911.'
 2. Provide funds to local governments to pay the cost of installing and operating wireless 911 systems and to reimburse wireless telephone service providers for costs incurred to provide 911 or enhanced 911 services.
 3. Levy a reasonable fee on subscribers of wireless telephone service to accomplish these purposes."[2]
The statute establishes the Wireless 911 Board to administer the fee imposed under the statute. As provided by the statute, administration of the fee includes "receiving revenues derived from the fee; distributing portions of such revenues to providers, counties, and the [State Technology Office]."[3]
Question One
You have asked whether the Wireless 911 Board is empowered to sue service providers who do not remit the Wireless E911 fee prescribed by section 365.172(8), Florida Statutes. Pursuant to section 365.172(8), Florida Statutes (2005):
 "(a) Each home service provider shall collect a monthly fee imposed on each customer whose place of primary use is within this state. For purposes of this section, the state and local governments are not customers. The rate of the fee shall be 50 cents per month per each service number, beginning August 1, 1999. The fee shall apply uniformly and be imposed throughout the state.
 (b) The fee is established to ensure full recovery for providers and for counties, over a reasonable period, of the costs associated with developing and maintaining an E911 system on a technologically and competitively neutral basis.
 (c) After July 1, 2001, the board may adjust the allocation percentages provided in s. 365.173 or reduce the amount of the fee, or both, if necessary to ensure full cost recovery or prevent overrecovery [sic] of costs incurred in the provision of E911 service, including costs incurred or projected to be incurred to comply with the order. Any new allocation percentages or reduced fee may not be adjusted for 1 year. The fee may not exceed 50 cents per month per each service number.
 (d) State and local taxes do not apply to the fee.
 (e) A local government may not levy any additional fee on wireless providers or subscribers for the provision of E911 service."
Nothing in the act defines a "home service provider," although a "provider" or "wireless provider" is defined as a person or entity who provides service and is either subject to the requirements of specified federal orders[4] or "[e]lects to provide wireless 911 service or E911 service in this state."[5]
Section 365.172(6), Florida Statutes (2005), prescribes the authority of the board. The board is authorized to:
 "1. Administer the E911 fee.
 2. Implement, maintain, and oversee the fund.
 3. Review and oversee the disbursement of the revenues deposited into the fund as provided in s. 365.173. . . . .
 * * *
 9. Sue and be sued, and appear and defend in all actions and proceedings, in its corporate name to the same extent as a natural person.
 * * *
 12. The board may adopt rules under ss. 120.536(1) and 120.54 to implement this section and ss. 365.173
and 365.174."
As specifically provided in section 365.172(6)(a)9., Florida Statutes (2005), the board is authorized to sue and be sued. Therefore, it is my opinion that the Wireless 911 Board is authorized to sue service providers who do not remit the appropriate Wireless E911 fee to the board.
Question Two
You have asked whether wireless service providers are responsible for remitting the E911 wireless fee prescribed by section 365.172(8), Florida Statutes (2005), if the providers are able to demonstrate that, due to their business model and methodology, they do not have the technology to determine whether a wireless service customer has a positive balance on the last day of the month.
Section 365.172(8), Florida Statutes (2005), requires each provider to collect a 50-cent monthly fee from each customer who uses the service primarily within Florida. The fee is assessed on each service number and is imposed throughout the state.[6] The purpose of the fee is to ensure that providers and counties recover the full costs of developing and maintaining an E911 system.[7] The statute defines the term "provider" to include "any person or entity that resells wireless service and was not assessed the fee by its resale supplier."[8]
Section 365.172(9)(b), Florida Statutes, makes a provision for calculating the monthly wireless 911 surcharge:
 "In the case of prepaid wireless telephone service, the monthly wireless 911 surcharge imposed by subsection (8) shall be remitted based upon each prepaid wireless telephone associated with this state, for each wireless service customer that has a sufficient positive balance as of the last day of each month. The surcharge shall be remitted in any manner consistent with the wireless provider's existing operating or technological abilities, such as customer address, location associated with the MTN [mobile telephone number], or reasonable allocation method based upon other comparable relevant data. The surcharge amount or an equivalent number of minutes may be reduced from the prepaid subscriber's account since a direct billing may not be possible. However, collection of the wireless 911 surcharge in the manner of a reduction of value or minutes from the prepaid subscriber's account does not constitute a reduction in the sales price for purposes of taxes that are collected at the point of sale."
As discussed more fully in the staff analysis for HB 1307:
 "For prepaid wireless telephone service, the 50 cent monthly wireless 911 surcharge is collected only from each wireless service customer that has a sufficient positive balance as of the last day of each month. As direct billing may not be possible, the surcharge amount, or an equivalent number of minutes, may be reduced from the prepaid subscriber's account. (See, Florida House of Representatives Staff Analysis, HB 1307 w/CS, dated April 13, 2003, Substantive Analysis, s. B, p. 4, `Management of the Fund.')"
Pursuant to subparagraph (e), each provider must deliver fee revenues to the board within sixty days after the end of the month in which the fee was billed. A monthly report must also be sent to the board showing the number of wireless customers whose place of primary use is in each county.[9]
The statute allows the board to "waive the requirement that the fees and number of customers whose place of primary use is in each county . . . if the provider demonstrates that such waiver is necessary and justified."[10] No comparable language authorizing the waiver of the monthly wireless 911 surcharge imposed pursuant to subsection (8) is evident in the act.
This office, like the courts, is not authorized to embellish legislative requirements with its own notions of what might be appropriate.[11] If additional requirements are to be imposed, or additional authority granted, action must be taken by the Legislature.[12] This office is without authority to qualify or read into this statute an interpretation or define words in the statute in a manner that would result in a construction that seems more equitable under circumstances presented by a particular factual situation; such construction when the language of a statute is clear would in effect be an act of legislation, which is exclusively the prerogative of the Legislature.[13]
In the absence of any statutory language authorizing the board to waive the fee assessed by the Legislature and in light of the affirmative duty imposed by the Legislature on wireless 911 providers to calculate and remit a surcharge, it is my opinion that providers are not relieved of their obligation to remit the E911 wireless fee even when they purport not to have the technology to determine whether a wireless service customer has a sufficient positive balance as of the last day of each month.
Question Three
You have asked whether prepaid wireless providers were required to collect and remit the Wireless E911 fee to the board prior to the passage of Chapter 2003-182, Laws of Florida.
It is the general rule that an administrative agency or officer possesses no inherent power and may exercise only such authority as expressly or by necessary implication is conferred by law.[14] If any reasonable doubt exists as to the lawful existence of a particular power, it should not be exercised.[15]
Prior to its amendment in 2003, section 365.172(8), Florida Statutes, imposed a monthly 50-cent fee on each telephone service number and used that fee to fund the wireless 911 emergency telephone system. Each provider collected the fee as a portion of its monthly billing process. The collected fees, minus one percent retained as a reimbursement for administrative costs, were remitted to the Wireless 911 Board.[16]
Legislative history for HB 1307, Chapter 2003-182, Laws of Florida, reflects the Legislature's recognition that "[t]he bill imposes a new 50 cent surcharge on prepaid wireless telephone subscribers. A similar fee is currently applicable to non-prepaid wireless subscribers."[17]
Chapter 2003-182, Laws of Florida, added new definitions to section365.172(3), Florida Statutes, to "facilitate a newly created methodology for collecting a monthly 911 surcharge from prepaid wireless customers."[18] The title of the bill states that it is an act "prescribing a method of collecting the wireless E911 fee in instances in which the wireless telephone service to which the surcharge applies is prepaid[.]"[19] The legislation provides a definition of "[p]repaid wireless telephone service":
 "wireless telephone service that is activated in advance by payment for a finite dollar amount of service or for a finite set of minutes that terminate either upon use by a customer and delivery by the wireless provider of an agreed-upon amount of service corresponding to the total dollar amount paid in advance or within a certain period of time following the initial purchase or activation, unless additional payments are made."[20]
With regard to the payment of the wireless 911 surcharge, the 2003 legislation provides for how the fee is to be calculated and remitted. Section 365.172(9)(b), Florida Statutes, provides:
 "In the case of prepaid wireless telephone service, the monthly wireless 911 surcharge imposed by subsection (8) shall be remitted based upon each prepaid wireless telephone associated with this state, for each wireless service customer that has a sufficient positive balance as of the last day of each month. The surcharge shall be remitted in any manner consistent with the wireless provider's existing operating or technological abilities, such as customer address, location associated with the MTN, [mobile telephone number] or reasonable allocation method based upon other comparable relevant data. The surcharge amount or an equivalent number of minutes may be reduced from the prepaid subscriber's account since a direct billing may not be possible. However, collection of the wireless 911 surcharge in the manner of a reduction of value or minutes from the prepaid subscriber's account does not constitute a reduction in the sales price for purposes of taxes that are collected at the point of sale."
This language was added to the statute by Chapter 2003-182, Laws of Florida, with the purpose of providing a method for collecting the wireless E911 fee in instances in which the wireless telephone service is prepaid.
In light of the legislative determination that this substantive grant of power was necessary to allow the collection of these fees and the limitations on the exercise of substantive powers by administrative agencies, I cannot say that a prepaid provider was required to collect and remit the wireless E911 fee prescribed by section 365.172(8), Florida Statutes, prior to the effective date of the statute, July 1, 2003.[21]
Sincerely,
 Charlie Crist, Attorney General
CC/tgh
[1] See s. 365.172(3)(i), Fla. Stat. (2005), which defines "E911," as follows:
 "`E911' is the designation for a wireless enhanced 911 system or wireless enhanced 911 service that is an emergency telephone system or service that provides a subscriber with wireless 911 service and, in addition, directs 911 calls to appropriate public safety answering points by selective routing based on the geographical location from which the call originated, or as otherwise provided in the state plan under s. 365.171, and that provides for automatic number identification and automatic location-identification features in accordance with the requirements of the order."
[2] Section 365.172(2)(f), Fla. Stat. (2005).
[3] See s. 365.172(3)(s), Fla. Stat., defining "[o]ffice" to mean the State Technology Office.
[4] See 365.172(3)(t), Fla. Stat., defining "[o]rder."
[5] Section 365.172(3)(v), Fla. Stat. (2005).
[6] Section 365.172(8)(a), Fla. Stat. (2005).
[7] Section 365.172(8)(b), Fla. Stat. (2005).
[8] Section 365.172(9)(g) (2005).
[9] Section 365.172(9)(e), Fla. Stat. (2005).
[10] Id.
[11] Cf., Johnson v. Taggart, 92 So. 2d 606 (Fla. 1957).
[12] Id., at 608. And see, Sarasota Herald-Tribune Co. v. SarasotaCounty, 632 So. 2d 606, 607 (Fla. 2nd DCA 1993).
[13] Cf., Chaffee v. Miami Transfer Company, Inc., 288 So. 2d 209
(Fla. 1974), and Op. Att'y Gen. Fla. 81-10 (1981).
[14] See, e.g., 67 C.J.S. Officers ss. 190, 192 (1978); Lang v.Walker, 35 So. 78, 80 (Fla. 1903); Gessner v. Del-Air Corporation,17 So. 2d 522 (Fla. 1944); Florida State University v. Jenkins,323 So. 2d 597 (Fla. 1st DCA 1975), Lee v. Division of Florida Land Salesand Condominiums, 474 So. 2d 282 (Fla. 5th DCA 1985); Ops. Att'y Gen. Fla. 04-30 (2004), 86-46 (1986), 85-95 (1985), 78-77 (1978). Seegenerally, 73 C.J.S. Public Administrative Law and Procedure s. 50 (1983).
[15] See, e.g., White v. Crandon, 156 So. 303, 305 (Fla. 1934); Gessnerv. Del-Air, supra.
[16] Section 365.172(9), Fla. Stat.
[17] See, Florida House of Representatives Staff Analysis, HB 1307 w/CS, dated April 13, 2003, Substantive Analysis, s. A, p. 3, "DOES THE BILL."
[18] See House of Representatives Staff Analysis, HB 1307 w/CS, dated April 13, 2003.
[19] Title, HB 1307, 2003 Florida Legislature.
[20] See s. 1, Ch. 2003-182, Laws of Florida, adding s. 365.172(3)(o), Fla. Stat.
[21] Section 4, Ch. 2003-182, Laws of Florida, provides the effective date of the act.