Dear Mr. Newton:
On behalf of the Broward County Board of County Commissioners, you ask the following questions:
 1. May the Broward County Board of County Commissioners retain and use land it acquires for delinquent taxes to construct affordable infill housing, in light of section 197.592(3), Florida Statutes?
 2. Does the adoption of a policy and implementation of a program by Broward County for affordable infill housing satisfy the provision in section 197.592(3), Florida Statutes, that property acquired by the county for delinquent taxes is "acquired for infill housing" or "dedicated by the board of county commissioners," thereby avoiding the requirement that the county convey the subject property to the city in which it is located?
Broward County is proposing a policy to promote affordable housing through a program to build infill housing on property it has acquired for delinquent taxes. You state that the program relies upon the ability of the county to retain and use land acquired by the county through section 197.592, Florida Statutes.
Section 197.592, Florida Statutes, provides a procedure for the county to sell lands it has acquired for delinquent taxes. Initially the statute recognizes that lands acquired by a county for delinquent taxes that have not been sold previously or dedicated by the board of county commissioners may be conveyed to the record fee simple owner of such lands as of the date the county obtained title to the lands.[1] As an alternative, subsection (3) of the statute provides:
 "Lands acquired by any county of the state for delinquent taxes in accordance with law which have not been previously sold, acquired for infill housing, or dedicated by the board of county commissioners, which the board of county commissioners has determined are not to be conveyed to the record fee simple owner in accordance with the provisions of subsections (1) and (2), and which are located within the boundaries of an incorporated municipality of the county shall be conveyed to the governing board of the municipality in which the land is located. Such lands conveyed to the municipality shall be freely alienable to the municipality without regard to third parties. Liens of record held by the county on such parcels conveyed to a municipality shall not survive the conveyance of the property to the municipality." (e.s.)
The statute recognizes the options that a county has when it comes into possession of lands through delinquent taxes and does not appear to mandate that a county convey the property to an individual or a municipality if specified conditions are present. Nothing in the plain language of the statute, nor in the legislative history of the amendment adding the language relating to infill housing, requires the county to transfer title to the property to the municipality in which the property is located, if the property is acquired for infill housing or dedicated for a particular use by the board of county commissioners.[2]
Where the Legislature has prescribed the manner in which a county may handle property it obtains through delinquent taxes, that procedure should be followed.[3] If the county has acquired the property for infill housing or has otherwise dedicated the property to a use, there is no requirement that the property be conveyed to the record fee simple owner on the date the property was acquired or to the municipality in which the property is located.
The statute is silent as to the method by which a county may designate property for infill housing, yet it is clear that the statute requires the county to acquire the property for such purpose, if the county intends to take possession of the property and it is not previously sold or dedicated. You indicate that the policy proposed by the county would require county representatives to evaluate whether the subject property is suitable for residential housing and, if found so, the county would first offer the property to the municipality in which the property is located under the condition that the city use the property for affordable infill housing. While this would appear to fulfill the Legislature's intent to encourage the development of construction of affordable housing on infill property,[4] the statute's plain language does not contemplate that a county may impose conditions on the conveyance of the property to the municipality in which the property is located, nor would such a policy satisfy the condition that the county must meet in order to avoid conveying the property to the municipality, i.e., the municipality may not be coerced into using the conveyed property for infill housing where the statute does not impose such a condition. The statute does not limit the purposes for which a municipality may use property acquired through the procedures in section 197.592, Florida Statutes, and it is beyond the authority of this office to add words of limitation to the statute.[5] This does not mean, however, that the county and city could not enter into an arms-length agreement or joint partnership to provide infill housing, or for that matter, any other purpose for which the county might dedicate the property.
Accordingly, the county's adoption of a policy that property acquired by the county through delinquent taxes be used for infill housing would appear to fulfill the requirements of section 197.592, Florida Statutes, should the county undertake such development. However, the county may not condition conveyance of property to a municipality under section 197.592 in order to fulfill the statute's requirement that the county acquire the property for infill housing.
Sincerely,
 Charlie Crist Attorney General
CC/tls
[1] Section 197.592(1), Fla. Stat., further stating that the former owner of the lands may file a verified written application showing: the description of the lands; the name and address of the former owner; the date title was acquired by the county; the price of the lands as previously fixed by resolution of the board of county commissioners, if it has been done; the use of the lands by the fee simple owner at the time of the county's acquisition; the facts and circumstances justifying the owner's request for restitution of the property; and an offer to pay all taxes, including interest and costs as provided by law.
[2] See Senate Staff Analysis and Economic Impact Statement, SB 1534 (Ch. 99-190), April 4, 1999, stating that before the amendment, "[p]roperty not sold, dedicated by the county, or conveyed to the previous owner, if located in a municipality, must be conveyed to that municipality." Section 8 of the bill amended s. 197.592(3), Fla. Stat., to provide that property acquired by the county for delinquent taxes, when "acquired for infill housing, does not have to be conveyed to a municipality even if located in the municipality." Discussions on the amendment indicated that the language relating to infill housing was added to allow parcels of land that are inadequate in size for construction of houses to be joined with abutting parcels for such development. See Florida Senate, Committee on Comprehensive Planning, Local and Military Affairs, SB 1534, Tape 1 of 2, March 23, 1999.
[3] See Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944) ("When the Legislature has prescribed the mode, that mode must be observed. When the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way."); Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976).
[4] See Meeting of Senate Committee on Comprehensive Planning, Local and Military Affairs, SB 1534, Tape 1 of 2, March 23, 1999; Senate Floor Debate, SB 1534, Tape 9 of 10, April 28, 1999; Senate Floor Debate, SB 1534, Tape 2 of 14, April 29, 1999.
[5] See Ops. Att'y Gen. Fla. 91-32 (1991) and 82-80 (1982);and see, generally, Chaffee v. Miami Transfer Company, Inc.,288 So. 2d 209 (Fla. 1974) (court in construing statute cannot invoke limitation or add words to statute not placed there by the Legislature).