Dear Mr. Newton:
As County Attorney of Broward County and at the direction of the Board of County Commissioners of Broward County, you have asked for my opinion on substantially the following questions:
1. Does section 125.0104(5)(a)1., Florida Statutes, authorize Broward County to use tourist development tax revenues received pursuant to this section for the purpose of financing, in part or in whole, the construction, furnishing and equipping of a hotel adjacent to the county-owned and county-operated convention center?
2. If the answer to Question One is "yes" may tourist development tax revenues be used to support the following capital improvements:
a. An overhead, air-conditioned "skyway" bridge connecting the convention center to the headquarters hotel;
b. Shared parking facilities available for use by the headquarters hotel guests and convention center attendees;
c. Vehicular roadways connecting the headquarters hotel and the convention center to major thoroughfares;
d. Common areas, grounds and landscaping shared by the headquarters hotel and the convention center;
e. Hotel meeting rooms and function rooms to satisfy overflow space needs of the convention center;
f. Oversized restaurants, kitchens and catering facilities to satisfy peak convention needs; and
g. Hotel guest rooms to the extent controlled by the convention center through contractual "room block" commitment agreements.
Question One
Section 125.0104, Florida Statutes, known as the Local Option Tourist Development Act,[1] authorizes a county to impose a tax on short-term rentals of living quarters or accommodations within the county unless such activities are exempt pursuant to Chapter 212, Florida Statutes.[2] The purpose and intent of section 125.0104, Florida Statutes, is to "provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state."[3]
Subsection (5) of the act enumerates the exclusive purposes that may be funded by tourist development taxes. Pursuant to section125.0104(5)(a), Florida Statutes:
(a) All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that countyfor the following purposes only:
1. To acquire, construct, extend, enlarge, remodel, repair, improve, maintain, operate, or promote one or more publicly owned and operatedconvention centers, sports stadiums, sports arenas, coliseums, or auditoriums, or museums that are publicly owned and operated or owned and operated by not-for-profit organizations and open to the public, within the boundaries of the county or subcounty special taxing district in which the tax is levied. . . . However, these purposes may be implemented through service contracts and leases with lessees with sufficient expertise or financial capability to operate such facilities[.] (e.s.)
Section 125.0104(5)(a), Florida Statutes, specifically provides that tourist development tax revenues are to be used by the imposing county "only" for the enumerated purposes. Where a statute enumerates the things upon which it is to operate or forbids certain things, it is ordinarily to be construed as excluding from its operation all things not expressly mentioned.[4] Thus, the specific enumeration in section125.0104(5)(a), Florida Statutes, of those projects for which tourist development tax revenues may be spent implies the exclusion of any others.
This office has consistently determined that tourist development tax revenues may only be used for the purposes enumerated in s.125.0104(5)(a), F.S.[5] The determination, however, as to whether a particular project is tourist related and furthers the purpose of promoting tourism is one which must be made by the governing body of the county and not by this office.[6]
Among the permissible uses of tourist development tax funds is the construction, extension or enlargement of publicly owned and operated convention centers. This office has concluded that tourist development tax funds may not be used for privately-owned facilities and that such facilities may not be funded under section 125.0104, Florida Statutes.[7] Further, the use of tourist development tax revenues for the construction or expansion of a convention center is limited to a facility that is both publicly owned and public operated.
While the term "convention center" as it is used in section125.0104(5), Florida Statutes, is not defined, this office had occasion to determine the meaning of the term in Attorney General Opinion 83-18. In that opinion this office was asked to determine whether Osceola County could utilize tourist development tax revenues for a number of purposes including a multi-purpose building to be used as a convention center. The opinion notes the rule of statutory construction that in the absence of a statutory definition the plain and ordinary meaning of a word or phrase should be used[8] and utilized the dictionary definition of the word "convention" for clarification:
A convention is stated to mean `a meeting or formal assembly, as representatives or delegates for action on particular matters' and `usually suggests a meeting of delegates representing political, church, social or fraternal organizations.' The Random House Dictionary, supra, at 319.
Conventional wisdom and common experience tell us that convention facilities and `civic centers' are commonly used for such things as concerts, tradeshows, circuses and other exhibitions and performances. A multi-purpose building used as a place for meetings of conventions and exhibitions as defined above would, in my opinion, fall within the scope of the term `convention centers' as used in s 125.0104(5)(a)1., F.S. I therefore conclude that such a building or project designed and maintained primarily for the purpose of furthering the advancement, improvement and promotion of tourism may be funded from the local tourist development tax revenues.[9]
Thus, in Attorney General Opinion 83-18 this office concluded that a multi-purpose building, intended to be used as a convention center, would fall within the scope of those projects for which tourist development taxes may be committed.
The Legislature has, in Chapter 159, Part II, Florida Statutes, provided a scheme whereby local governments may finance the construction of "public lodging and restaurant facilities" as part of a project within the scope of the Florida Industrial Development Financing Act. The provisions of this act recognize that "[t]he agriculture, tourism, urban development, historic preservation, education, and health care industries, among others, are vital to the economy of the state and the welfare of the people and need to be enhanced and expanded to improve the competitive position of the state."[10] The Legislature determined that the purposes to be achieved by such projects and their financing represent public purposes and that these purposes implement the governmental purposes of providing for the health, safety and welfare of the people, including implementation of Article VII, section 10, Florida Constitution.[11] For purposes of the "Florida Industrial Development Financing Act," the terms "[p]ublic lodging or restaurant facility" and "convention or trade show facility" are defined separately and distinctly as they constitute projects within the scope of the act:
(12) "Public lodging or restaurant facility" means property used for any public lodging establishment as defined in s. 509.242 or public food service establishment as defined in s. 509.013(5) if it is part of the complex of, or necessary to, another facility qualifying under this part.
(13) "Convention or trade show facility" means property used for or useful in connection with conventions and trade shows, including special purpose buildings and structures, such as meeting halls and display areas, which are generally used and generally available to house conventions or trade shows.
Section 125.0104(5)(a)1., Florida Statutes, refers exclusively to "convention centers." In the absence of any indication that the Legislature intended such facilities as public lodging and restaurant facilities to be included within the scope of the term "convention center" as it is used in section 125.0104(5)(a)1., this office cannot read the statute so expansively.[12]
In sum, while section 125.0104(5)(a)1., Florida Statutes, authorizes the use of tourist development taxes for those purposes specifically enumerated therein, including convention centers, nothing in the statute authorizes the use of these revenues for the construction, furnishing or equipping of lodging facilities or accommodations such as a hotel adjacent to the county-owned and county-operated convention center. Therefore, it is my opinion that Broward County may not use tourist development tax revenues received pursuant to this section for the purpose of financing, in whole or in part, the construction, furnishing and equipping of a hotel adjacent to the county-owned and county-operated convention center.
Question Two
In light of my response to your first question, no response to Question Two is necessary. While you have premised your second question on a positive response to the first, I would note that a number of the projects you have identified in your second question may be permissible expenditures of tourist development tax revenues pursuant to section125.0104(5)(a)1., Florida Statutes, if those projects are used to "extend, enlarge, remodel, repair, improve, maintain, [or] operate" the convention center itself. While this office is not authorized to do an in-depth analysis of the facts of each type of project listed, it would appear that such projects as parking facilities, kitchens and catering facilities constructed as part of a convention center would be permissible uses of these tax revenues since each of these projects may be determined by the county to satisfy the statutory requirement that they constitute an extension, remodeling or improvement of the convention center.[13]
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] Section 125.0104(1), Fla. Stat.
[2] See s. 125.0104(3)(a), Fla. Stat., stating that it is the intent of the Legislature that every person who rents, leases, or lets living quarters or accommodations in "any hotel, apartment hotel, motel, resort motel, apartment, apartment motel, roominghouse, mobile home park, recreational vehicle park, or condominium for a term of 6 months or less is exercising a privilege which is subject to taxation under this section. . . ."
[3] See Ops. Att'y Gen. Fla. 95-71 (1995), 94-12 (1994), 87-16 (1987), and 83-18 (1983).
[4] See Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952), andAlsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944), for the proposition that a legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way. Andsee s. 125.0104(5)(d), Fla. Stat., stating that "[a]ny use of the local option tourist development tax revenues collected pursuant to this section for a purpose not expressly authorized . . . is expressly prohibited."
[5] See Op. Att'y Gen. Fla. 86-68 (1986) (tourist development tax revenues may be used for beach cleaning and maintenance) and 87-16 (tourist development tax revenues may be used to improve, maintain, renourish or restore public shoreline or beaches of inland freshwater lake). Cf. Ops. Att'y Gen. Fla. 91-62 (1991) (construction of boat ramps and attendant parking facilities in proximity to inland lakes and rivers not a proper use of tourist development tax revenues); 90-55 (1990) (no authority to use tourist development tax revenues to construct beach parks, fund additional law enforcement patrols or lifeguards on the beach, or build and maintain sanitary facilities on or near the beach); and 88-49 (1988) (no authority to use tourist development tax revenues to acquire real property for public beach access).
[6] See Ops. Att'y Gen. Fla. 87-16 (1987) and 83-18 (1983).
[7] See Op. Att'y Gen. Fla. 96-54 (1996) (county tourist development funds may not be used for a sports stadium or arena, such as the Gainesville Raceway, that is owned and operated by a private, not-for-profit organization). Compare, s. 125.0104(5)(a)1., Fla. Stat., which specifically allows the expenditure of tourist development tax funds for museums and zoological parks that are owned and operated by not-for-profit organizations and open to the public, as an exception to the general requirement that facilities be publicly owned to be eligible for such funds.
[8] See, e.g., Sieniarecki v. State, 756 So. 2d 68 (Fla. 2000) (in absence of a statutory definition, words of common usage are construed in their plain and ordinary sense and, if necessary, the plain and ordinary meaning of the word can be ascertained by reference to a dictionary); Rollins v. Pizzarelli, 761 So. 2d 294 (Fla. 2000); In reMcCollam, 612 So. 2d 572 (Fla. 1993) (when language of statute is clear and unambiguous and conveys a clear meaning, statute must be given its plain and ordinary meaning); Frankenmuth Mutual Insurance Company v.Magaha, 769 So. 2d 1012 (Fla. 2000) (in ascertaining the plain and ordinary meaning of a term, a court may refer to a dictionary); Ops. Att'y Gen. Fla. 93-47 (1993) (in construing statute which is clear and unambiguous, the plain meaning of statute must first be considered) and 93-02 (1993) (since it is presumed that the Legislature knows the meaning of the words it uses and intends to convey its intent by the use of specific terms, courts must apply the plain meaning of those words if they are unambiguous).
[9] Attorney General's Opinion 83-18 (1983).
[10] Section 159.26(1), Fla. Stat.
[11] See s. 159.26, Fla. Stat.
[12] The Attorney General's Office has no authority to supply additional words to or modify the meaning of a duly enacted statute; such construction when language of statute is clear would in effect be an act of legislation which is exclusive prerogative of the Legislature.Cf., Chaffee v. Miami Transfer Company, Inc., 288 So.2d 209 (Fla. 1974); Ops. Att'y Gen. Fla. 06-26 (2006), 87-43 (1987), 86-32 (1986), and 82-20 (1982).
[13] This office has previously determined that tourist development tax revenues could be used for such purposes as a multipurpose building (Op. Att'y Gen. Fla. 83-18 [1983]) and parking facilities (Op. Att'y Gen. Fla. 00-15 [2000]) pursuant to section 125.0104(5)(a)1., Fla. Stat.